# EXHIBIT 5

EXHIBIT 5



**ARCH INSURANCE COMPANY**
A Missouri Corporation

ADMINISTRATIVE OFFICE
One Liberty Plaza
53rd Floor
New York, NY 10006
Tel: 800-817-3252

HOME OFFICE
3100 Broadway, Suite 511
Kansas City, MO 64111

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY

**NOTICE: THIS IS A CLAIMS MADE AND REPORTED POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THIS POLICY IS LIMITED TO LIABILITY FOR WRONGFUL ACTS FOR WHICH CLAIMS ARE FIRST MADE WHILE THE POLICY IS IN FORCE AND WHICH ARE REPORTED TO THE INSURER NO LATER THAN SIXTY (60) DAYS AFTER THE TERMINATION OF THE POLICY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**THE LIMIT OF LIABILITY AVAILABLE TO PAY LOSS, INCLUDING JUDGMENT OR SETTLEMENT AMOUNTS, IS REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS. ALL LOSS, INCLUDING JUDGMENTS, SETTLEMENTS AND DEFENSE COSTS, ARE SUBJECT TO THE APPLICABLE RETENTION AMOUNT.**

**THE POLICY DOES NOT PROVIDE FOR ANY DUTY OR OBLIGATION ON THE PART OF THE INSURER TO DEFEND THE INSURED PERSONS OR THE PRIVATE COMPANY.**

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

## DECLARATIONS

Terms appearing in **bold** in these Declarations are defined in the Policy.

| | | |
|---|---|---|
| Policy No.: PCD0015105-00 | | |
| Item 1. | **Named Company**: Principal Address: | Centurion Real Estate Partners, LLC 599 Lexington Avenue, 40th Floor New York, NY 10022 |
| Item 2. | **Policy Period**: From: 5/03/2006 | at 12:01 a.m. (local time at the address stated in Item 1.) |
| | To: 5/03/2007 | at 12:01 a.m. (local time at the address stated in Item 1.) |

ARCH0002433

| Item 3. | Limit of Liability: | $2,000,000 Aggregate for all Coverages combined (including **Defense Costs**) | 09.11.2006 |
|---|---|---|---|
| Item 4. | Retention: | for **Loss** arising from each **Claim** and all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Acts**: | |

Item 4. Retention: for **Loss** arising from each **Claim** and all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Acts**:

    (a) **Claims** Other than **Employment Claims**:
        Coverage A            NONE
        Coverage B            $75,000
        Coverage C            $75,000

    (b) **Employment Claims**:
        Coverage A            NONE
        Coverage B            $25,000
        Coverage C            $25,000

| Item 5. | Pending and Prior **Claim** Date: | 5/03/2005 |
|---|---|---|

| Item 6. | Policy Premium: Premium Attributable to Terrorism Risk Insurance: (Included in Policy Premium ☒) (In addition to Policy Premium ☐) | **Redacted** |
|---|---|---|

| Item 7. | Discovery Period | (a) Additional Premium | **Redacted** |
|---|---|---|---|
| | | (b) Additional Period | One Year |

Item 8.   Endorsements (effective at inception): See attached Schedule of Forms and Endorsements

Item 9.   Notices to **Insurer**:

| Notice Of **Claim(s)** or Potential **Claim(s)** To Be Sent To: | All Other Notices To Be Sent To: |
|---|---|
| Executive Assurance Claims Arch Insurance Company One Liberty Plaza, 53rd Floor New York, NY 10006 Fax: (646) 746-8111 | Executive Assurance Underwriting Arch Insurance Company One Liberty Plaza, 53rd Floor New York, NY 10006 Fax: (212) 651-6499 |

The **Insurer** has caused this Policy to be signed and attested to by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the **Insurer**.

_____
Authorized Representative

8/28/2006
Date

President

Secretary

# SCHEDULE OF FORMS AND ENDORSEMENTS

SC 09.11.2006

**INSURED:** Centurion Real Estate Partners, LLC
**POLICY NUMBER:** PCD0015105-00

TERM: 5/03/2006 to 5/03/2007

| ENDT. NO. | FORM NO. | TITLE |
|---|---|---|
| | 00 PCD0048 00 03 03 | PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY |
| 1 | 00 ML0207 33 03 04 | ADDITIONAL INSURED(S) ENDORSEMENT (EXCESS) |
| 2 | 00 ML0207 33 03 04 | ENDORSEMENT DELETING EXCLUSION IV.1.(I) |
| 3 | 00 ML0207 33 03 04 | ENDORSEMENT AMENDING SECTION XX (PRIVATE COMPANY) |
| 4 | 00 MLE0002 33 12 04 | NEW YORK AMENDATORY ENDORSEMENT |
| | 00 MLT0027 00 02 06 | TERRORISM COVERAGE DISCLOSURE NOTICE |

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

00 ML0207 33 03 04
2- 14176

ARCH0002435

# PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY

SC 09.11.2006

In consideration of the payment of the premium set forth in Item 6 of the Declarations of this Policy, which are attached to and are a part of this Policy, and in reliance upon the statements in the **Application**, which is deemed attached to and is a part of this Policy, and subject to the Limit of Liability set forth in Item 3 of the Declarations of this Policy, and subject to all of the terms and conditions of this Policy, the Insurer designated in the Declarations (hereinafter called "the **Insurer**") agrees with the **Insureds**, as follows:

## SECTION I

COVERAGE.

COVERAGE A: DIRECTORS AND OFFICERS INSURANCE

> The **Insurer** will pay on behalf of the **Insured Persons** a **Loss** for which the **Insured Persons** are not indemnified and which the **Insured Persons** shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or Discovery Period, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

COVERAGE B: PRIVATE COMPANY LIABILITY ARISING FROM INDEMNIFIABLE LOSS

> The **Insurer** will pay on behalf of the **Private Company** a **Loss** for which the **Private Company** has, to the extent permitted or required by law, indemnified the **Insured Persons**, and which the **Insured Persons** have become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or Discovery Period, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

COVERAGE C: PRIVATE COMPANY LIABILITY

The **Insurer** will pay on behalf of the **Private Company** a **Loss** for which the **Private Company** shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or Discovery Period, if applicable, against the **Private Company** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

As a condition precedent to any coverage under Coverages A, B and C, the **Insureds** shall report **Claims** to the **Insurer** in accordance with Section IX. The **Insurer** shall, in accordance with Section X, advance covered **Defense Costs** as a result of such **Claim** prior to its final disposition.

## SECTION II

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

DEFINITIONS.

All terms defined in this Policy appear in **bold**.

(a)     "**Application**" means:

00 PCD0048 00 03 03
2 - 14176

ARCH0002436

(1) each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this Policy or the underwriting of any other directors and officers and/or corporation and/or employment practices (or equivalent) liability policy issued by the **Insurer,** or any of its affiliates, of which this Policy is a renewal, replacement or which it succeeds in time; and

(2) any public documents filed by the **Private Company** with any federal, state, local, or foreign regulatory agency.

(b) "**Benefit**" means **Stock Benefits** or any perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with an employee benefit plan and any other similar payment, provided **Benefits** shall not include salary or wages or non-deferred cash incentive compensation.

(c) "**Claim**" means:

(1) a written demand against an **Insured** for monetary, non-monetary or injunctive relief; or

(2) a civil or arbitration proceeding against an **Insured** for monetary, non-monetary or injunctive relief which is commenced by:

(i) service of a complaint or similar pleading; or

(ii) receipt or filing of a notice of charges; or

(3) a formal administrative or regulatory adjudicatory or investigative proceeding against any **Insured Person** or, with respect to any **Wrongful Act** described in the definition of **Employment Claim**, against the **Private Company** commenced by the filing of a notice of charge, formal investigative order or similar document, including without limitation any proceeding by the Equal Employment Opportunity Commission or other similar governmental authority;

including without limitation an **Employment Claim**; provided **Claim** shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

(d) "**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the defense and appeal of a **Claim** against the **Insureds**, but shall not include salaries, wages, overhead or benefit expenses associated with **Insured Persons** or employees of the **Private Company**.

(e) "**Employment Claim**" means any **Claim** which in whole or in part is brought and maintained by or on behalf of any past, present or prospective employee of the **Private Company** for a **Wrongful Act** in connection with any actual, alleged or constructive wrongful dismissal, discharge or termination of employment; breach of any oral, written or implied employment contract or quasi-employment contract; employment-related misrepresentation; violation of any federal, state or local statute, regulation, ordinance, common law or public policy concerning employment or discrimination in employment; sexual or other illegal workplace harassment (including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or communications); wrongful failure to employ or promote; wrongful discipline; wrongful deprivation of a career opportunity; wrongful demotion or adverse change in the terms, conditions or status of employment; failure to grant tenure; failure to adopt adequate workplace or employment policies and procedures; illegal retaliatory treatment of employees; negligent hiring; negligent evaluation of employees; wrongful reference; employment-related invasion of privacy; employment-related

ARCH0002437

defamation; employment-related wrongful infliction of emotional distress; or other employment-related torts. SC 09.11.2006

(f)     "**Executive Officer(s)**" means with respect to any **Company** its chairperson, president, chief executive officer, chief operating officer, chief financial officer, in-house general counsel and, solely with respect to an **Employment Claim**, director of human resources or similar position.

(g)     "**Financial Impairment**" means the status of the **Private Company** resulting from:

    (1)     the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Private Company**, or

    (2)     the **Private Company** becoming a Debtor-In-Possession.

(h)     "**Insured Person(s)**" means:

    (1)     any person who has been, now is or shall become a duly elected or appointed director, officer, general counsel, risk manager, and in the case of a limited liability company, member of the management board (or equivalent position), of the **Private Company**;

    (2)     in the event a **Subsidiary** operates outside the United States, then the term "**Insured Person(s)**" also means any person who has held, now holds or shall hold those titles, positions or capacities in such foreign **Subsidiary** which are equivalent to a position listed in (1) above in an organization incorporated within the United States; and

    (3)     only with respect to an **Employment Claim**, any other person not described in (1) or (2) above who has been, now is or shall become an employee of the **Private Company**, including any full-time, part-time, seasonal or temporary employee; provided such other employee shall not be considered an **Insured Person** for purposes of Exclusion (f) in Section IV below.

(i)     "**Insured(s)**" means:

    (1)     **Insured Persons**; and

    (2)     with respect to Coverages B and C only, the **Private Company**.

(j)     "**Interrelated Wrongful Acts**" means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

(k)     "**Loss**" means damages, judgments (including pre/post-judgment interest on a covered judgment), settlements and **Defense Costs** for which the **Insureds** become legally obligated to pay; however, **Loss** shall not include (i) civil or criminal fines or penalties imposed by law, (ii) taxes, (iii) any amount that represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid in connection with any purchase of any securities or assets, or any plaintiffs' counsel fees and expenses in any **Claim** seeking such increase in consideration, (iv) any amount for which the **Insureds** are not financially liable or for which the claimants are without legal recourse to the **Insureds**, (v) any amount that represents or is substantially equivalent to disgorgement or restitutionary or rescissionary damages, or forfeiture of any profits or remuneration, (vi) any amount incurred by an **Insured Person** in connection with any proceeding or investigation that is not then a **Claim** against such **Insured Person**, even if such amount also benefits the defense of a covered **Claim** or if such proceeding or investigation subsequently gives rise to a covered **Claim**, (vii) costs incurred by the **Private Company** to

ARCH0002438

comply with any injunctive or other non-monetary relief or an agreement to provide such relief, or (viii) matters which may be deemed uninsurable under the law pursuant to which this Policy shall 11.2006 be construed.

**Loss** shall specifically include (subject to this Policy's other terms, conditions and limitations, including, but not limited to, exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts) punitive, exemplary and multiple damages, or liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages.

(l)    "**Named Company**" means the company designated in Item 1 of the Declarations.

(m)    "**Policy Period**" means the period specified in Item 2 of the Declarations, subject to prior termination in accordance with Section XII.

(n)    "**Private Company**" means the **Named Company** and any **Subsidiary** thereof.

(o)    "**Retaliation**" means retaliatory treatment against an employee of the **Private Company** on account of such individual:

   (1)    exercising his or her rights under law, including but not limited to rights under any workers compensation laws, the Family and Medical Leave Act, or the Americans with Disabilities Act;

   (2)    refusing to violate any law;

   (3)    having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law by the **Private Company**;

   (4)    disclosing or threatening to disclose to a superior, to any governmental authority or to the public any alleged violations of law; or

   (5)    filing any claim against the **Private Company** under the Federal False Claims Act or any other similar "whistle blower" federal, state or local statutory law or common law anywhere in the world.

(p)    "**Stock Benefits**" means any offer, promise, grant or issuance by the **Private Company** to an **Insured Person** of stock, stock warrants, stock options or other securities of the **Private Company**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Private Company**.

(q)    "**Subsidiary**" means:

   (1)    a not-for-profit organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by a **Private Company**;

   (2)    a corporate organization with respect to which the **Named Company** owns, either directly or indirectly through one or more of its **Subsidiaries**, more than 50% of the outstanding securities representing the present right to vote for election of directors or equivalent positions; provided that if the corporate organization first becomes a **Subsidiary** as described in this paragraph (2) during the **Policy Period** and if its total consolidated assets as reflected in its then most recent consolidated financial statements total more than 10% of the total consolidated assets of the **Named Company** as reflected in the

ARCH0002439

**Named Company's** then most recent consolidated financial statements, then such organization and its **Insured Persons** shall be covered under this Policy only if within 90 days of such organization becoming a **Subsidiary**, the **Named Company** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and paid any additional premium and agreed to any amendment of the provisions of this Policy required by the **Insurer** relating to such new **Subsidiary**.

An organization becomes a **Subsidiary** at the time the circumstances described in paragraph (1) or (2) above first apply to such organization. An organization ceases to be a **Subsidiary** at the time such circumstances no longer apply to such organization.

In all events, coverage as is otherwise afforded under this Policy with respect to a **Claim** made against any a **Subsidiary** or its **Insured Persons** shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that such **Subsidiary** became a covered **Subsidiary** as provided above and prior to the time that such **Subsidiary** ceased to be a covered **Subsidiary**.

(r) "**Wrongful Act**" means:

(1) any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Insured Persons** in their respective capacities as such or, with respect to Coverage C, by the **Private Company**, or

(2) any other matter claimed against the **Insured Persons** solely by reason of their status as **Insured Persons**.

## SECTION III

EXTENSIONS.

Subject otherwise to the terms hereof, this Policy shall cover **Loss** as a result of a **Claim** for a **Wrongful Act** of an **Insured Person** made against the estates, heirs, or legal representatives of such **Insured Person** if deceased, and the legal representatives of such **Insured Person** in the event of incompetency, insolvency or bankruptcy.

Subject otherwise to the terms hereof, this Policy shall cover **Loss** as a result of a **Claim** made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an **Insured Person** for a **Claim** arising solely out of his or her status as the spouse of such **Insured Person**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by an **Insured Person** and the spouse, or property transferred from an **Insured Person** to the spouse; provided, however, that this extension shall not afford coverage for a **Claim** for a **Wrongful Act** of the spouse, but shall apply only to a **Claim** arising out of a **Wrongful Act** of an **Insured Person**.

All terms of this Policy, including without limitation the Retention, applicable to **Loss** incurred by the **Insured Person** shall also apply to loss incurred by such **Insured Person's** estates, heirs, legal representatives or spouses.

## SECTION IV

EXCLUSIONS.

1. The **Insurer** shall not be liable under any Coverages to make any payment for **Loss** as a result of a **Claim** made against an **Insured**:

(a) arising out of, based upon or attributable to the gaining of any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, as evidenced by any written statement or written admission by such **Insured** or a judgment or other final adjudication in the underlying action or in a separate action, alternative dispute resolution process (including one pursuant to Section XVI) or other proceeding;

(b) arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act by such **Insured**, as evidenced by a written statement or written admission by such **Insured Person** or a judgment, ruling or other finding of fact in the underlying action or in a separate action, alternative dispute resolution process (including one pursuant to Section XVI) or other proceeding;

[For the purpose of determining the applicability of the foregoing Exclusions (a) and (b), the **Wrongful Acts** of and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**, and only the knowledge possessed by an **Executive Officer** shall be imputed to the **Private Company**.]

(c) alleging, arising out of, based upon or attributable to:

(1) any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given under any prior policy of which this Policy is a direct or indirect renewal or replacement; or

(2) any **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in (1) above, constitute **Interrelated Wrongful Acts**;

(d) alleging, arising out of, based upon or attributable to:

(1) any demand, suit, proceeding or formal investigation pending on or prior to the date stated in Item 5 of the Declarations; or

(2) any **Wrongful Act** alleged in such pending or prior demand, suit, proceeding or formal investigation, or any **Wrongful Act** whenever occurring, which together with any **Wrongful Act** alleged in such pending or prior demand, suit, proceeding or formal investigation, constitute **Interrelated Wrongful Acts**;

(e) alleging, arising out of, based upon or attributable to any actual or alleged act or omission of the **Insured Persons** in their capacities as directors, officers, trustees, governors, employees, general counsel, risk manager or in the case of a limited liability company, members of the management board (or equivalent position), of any organization other than the **Private Company**, even if service in such capacity is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **Insured Person** by, the **Private Company**;

(f) which is brought or maintained by, or on behalf of, or in the right of (whether such right is transferred or assigned by operation of law or otherwise) the **Private Company** or any **Insured Person** in any capacity; or which is brought or maintained by any security holder or member of a **Private Company**, whether directly or derivatively, unless such security holder's or member's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured Person** or any **Private Company**; provided, however, this exclusion shall not apply to:

(1) any **Claim** brought by an **Insured Person** in the form of a cross-claim or third party claim for contribution or indemnity which is part of, and results directly from a **Claim** that is covered by this Policy; or

(2) any **Employment Claim**;

(g) for bodily injury, sickness, disease or death of any person, or for damage to or destruction of any tangible property including loss of use thereof;

(h) for emotional distress, mental anguish, outrage, humiliation, false arrest or imprisonment, abuse of process, malicious prosecution, defamation, violation or invasion of any right of privacy or private occupancy, trespass, nuisance or wrongful entry or eviction; provided, however, this exclusion shall not apply to any **Employment Claim**;

(i) alleging, arising out of, based upon or attributable to:

(1) any actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time; or

(2) any request, demand or order to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants,

including but not limited to such a **Claim** alleging damage to the **Private Company** or its security holders; provided, however, this exclusion shall not apply to any **Employment Claim**.

"Pollutants" include, but are not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including without limitation smoke, vapor, soot, fumes, acids, alkalies, chemicals, mold, fungi, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products, waste and any electric, magnetic or electromagnetic field of any frequency. "Waste" includes, but is not limited to, material to be recycled, reconditioned, or reclaimed and nuclear materials.

(j) alleging, arising out of, based upon, or attributable to any actual or attempted offering, solicitation, sale, distribution or issuance of securities by a **Private Company** ("Offering") or a purchase or sale of such securities subsequent to such Offering; provided, however, this exclusion shall not apply to any private, non-public Offering in the event that (i) within 30 days prior to the effective time of such private Offering, the **Named Company** gives the **Insurer** written notice of such private Offering, together with full particulars and underwriting information as required by the **Insurer**; and (ii) prior to the effective time of such private Offering, the **Named Company** accepts such terms and conditions and pays any additional premium required by the **Insurer** for such coverage;

(k) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974, or amendments thereto or any similar provisions of state or foreign statutory or common law; or

(l) alleging, arising out of, based upon, or attributable to any failure or omission by an **Insured** to obtain effect or maintain adequate insurance.

2. The **Insurer** shall not be liable under Coverage C to make any payment for **Loss** as a result of a **Claim** made against a **Private Company**:

ARCH0002442

(a)    for any actual or alleged obligation under or breach of any oral or written contract or agreement, including any liability of others assumed by the **Private Company** under any such contract or agreement; provided, however, this exclusion shall not apply (i) to an actual or alleged breach of an implied contract in an **Employment Claim**, or (ii) to the extent the **Private Company** would have been liable for such **Loss** in the absence of such contract or agreement;

(b)    alleging, arising out of, based upon, or attributable to any actual or alleged obligation of the **Private Company** pursuant to any workers compensation, unemployment insurance, social security, disability benefits or any similar federal, state or local statutory law or common law anywhere in the world; provided, however, this exclusion shall not apply to any **Employment Claim** for **Retaliation**;

(c)    for any actual or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act), the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world; provided, however, this exclusion shall not apply to any **Employment Claim** for **Retaliation**;

(d)    alleging, arising out of, based upon, or attributable to a lockout, strike, picket line, hiring of replacement workers, or other similar actions in connection with labor disputes or labor negotiations;

(e)    to the extent such **Loss** constitutes **Benefits** due or to become due or the equivalent value of such **Benefits**; provided, however, this exclusion shall not apply to **Defense Costs**;

(f)    brought or maintained by or on behalf of a customer or client of the **Private Company** in connection with the actual or alleged rendering or failure to render any service to or for the benefit of such customer or client;

(g)    alleging, arising out of, based upon, or attributable to any actual or alleged violation of any statutory, regulatory or common law involving price fixing, restraint of trade, monopolization, unfair trade practices, anti-trust, price discrimination, predatory pricing, business competition or tortuous interference in another's business or contractual relationships; or

(h)    alleging, arising out of, based upon or attributable to any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, service mark or misappropriation of ideas or trade secrets, or other intellectual property rights.

## SECTION V

LIMIT OF LIABILITY - (FOR ALL **LOSS**, INCLUDING **DEFENSE COSTS**).

The Limit of Liability stated in Item 3 of the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss** under all Coverages combined, as a result of all **Claims** first made against the **Insureds** during the **Policy Period** and the Discovery Period (if applicable) and reported in writing to the **Insurer** pursuant to Section X. The Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the **Policy Period**.

The **Insurer** shall not pay **Defense Costs** in addition to the Limit of Liability. **Defense Costs** are part of **Loss** and as such are subject to and reduce the Limit of Liability.

00 PCD0048 00 03 03
2 - 14176

ARCH0002443

All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed to be one **Claim** for purposes of this Policy, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against an **Insured**, regardless of whether such date is before or during the **Policy Period**.

## SECTION VI

RETENTION.

The **Insurer** shall only be liable for the amount of **Loss** as a result of each **Claim** which is in excess of the applicable Retention amount stated in Item 4 of the Declarations, such Retention amount to be borne by the **Insureds** and shall remain uninsured.

No Retention amount applies to Coverage A.

The Retention amount stated in Item 4(a) of the Declarations applies to **Loss** as a result of any **Claim** other than an **Employment Claim**. The Retention amount stated in Item 4(b) of the Declarations applies to **Loss** as a result of an **Employment Claim**.

In the event more than one of the Retention amounts stated in Item 4(a) and 4(b) of the Declarations otherwise applies to a **Claim**, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the maximum aggregate Retention amount applicable to **Loss** as a result of such **Claim**.

## SECTION VII

INDEMNIFICATION.

(a) If the **Corporation**:

    (1) is permitted or required by common or statutory law to indemnify the **Insured Persons** for **Loss** or to advance **Defense Costs** on their behalf; and

    (2) fails or refuses, other than for reason of **Financial Impairment**, to indemnify the **Insured Persons** for such **Loss** or to advance such **Defense Costs**;

then, any payment of such **Loss** or advancement of such **Defense Costs** by the **Insurer** shall be subject to the applicable Coverage B Retention amount stated in Item 4 of the Declarations.

For purposes of this Section VII, the **Private Company** shall be deemed to provide indemnification to the **Insured Persons** for such **Loss** or advancement of such **Defense Costs** to the fullest extent permitted or required by law, and hereby agrees to indemnify the **Insured Persons** for such **Loss** and to advance such **Defense Costs** to the fullest extent permitted or required by law, including the making in good faith of any required application for court approval.

(b) While the **Private Company** is unable to indemnify the **Insured Persons** for **Loss** or to advance **Defense Costs** for reasons of **Financial Impairment,** no Retention shall apply to such **Loss** or **Defense Costs**; provided the **Insureds** shall take all action reasonably required to obtain court approval or other authorization for any such indemnification or advancement.

## SECTION VIII

PAYMENT PRIORITY.

ARCH0002444

If the amount of any covered **Loss** which is otherwise due and owing by the **Insurer** under this Policy exceeds the then-remaining Limit of Liability of this Policy, the **Insurer** shall pay such **Loss** (subject to such Limit of Liability) in the following priority:

(a) first, the **Insurer** shall pay any such **Loss** covered under Coverage A;

(b) second, only if and to the extent the payment under Coverage A does not exhaust the Limit of Liability, the **Insurer** shall pay any remaining **Loss** otherwise covered under this Policy.

Subject to the foregoing paragraph, the **Insurer** shall, upon receipt of a written request from the chief executive officer of the **Named Company**, delay any payment of covered **Loss** otherwise due and owing under Coverage B and/or C until such time as the **Named Company** designates; provided the **Insurer**'s liability with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

## SECTION IX

NOTICE.

All notices to the **Insurer** shall refer to the Policy Number and shall be given in writing and sent by mail, prepaid express courier or by facsimile, to the address listed in Item 9 of the Declarations and shall be effective upon receipt.

(a) The **Private Company** or an **Insured Person** shall, as a condition precedent to the obligations of the **Insurer** under this Policy, give written notice to the **Insurer** at the address or facsimile number listed in Item 9 of the Declarations of a **Claim** made against an **Insured** as soon as practicable after the **Named Company's** risk manager or general counsel (or equivalent position) first becomes aware of the **Claim**, but in all events no later than sixty (60) days after the end of the **Policy Period** or the Discovery Period (if applicable).

(b) If during the **Policy Period** the **Private Company** or an **Insured Person** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the anticipated allegations of **Wrongful Act(s)** and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** for a **Wrongful Act**:

    (1) which is the same as any **Wrongful Act** alleged or contained in such notice, or

    (2) which together with any **Wrongful Act** alleged or contained in such notice constitute **Interrelated Wrongful Acts,**

shall be considered made at the time such notice of circumstances was first given to the **Insurer**. However, the **Insurer** shall not be liable under this Policy for any amount incurred by an **Insured** in the defense, investigation or settlement of any such potential **Claim** prior to the date the **Claim** is actually made against the **Insured**.

## SECTION X

DEFENSE COSTS (INCLUDING THE ADVANCEMENT OF **DEFENSE COSTS**), SETTLEMENTS, JUDGMENTS AND ALLOCATION.

Except as hereinafter stated, the **Insurer** shall advance, at the written request of the **Insureds,** covered **Defense Costs** excess of the applicable Retention prior to the final disposition of a **Claim**. Such advancements by the **Insurer** shall be repaid to the **Insurer** by the **Insured Persons** or the **Private**

ARCH0002445

**Company** severally according to their respective interests in the event and to the extent that it is subsequently determined that the **Insured Persons** or the **Private Company** are not entitled under the terms and conditions of this Policy to payment of such **Defense Costs**.

The **Insurer** does not assume any duty to defend any **Claim**. However, the **Insureds** may at their sole option tender to the **Insurer**, within twenty (20) days following the date the **Claim** is made against such **Insured**, the defense of a **Claim** for which coverage is provided under this Policy. Regardless of whether the **Insurer** assumes the defense of such **Claim**, the **Insureds** shall not admit or assume any liability, enter into any settlement agreement, make any settlement offer, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this Policy. The **Insurer's** consent shall not be unreasonably withheld.

The **Insurer** shall have the right to effectively associate with the **Insureds** in the defense of any **Claim** that involves or appears reasonably likely to involve the **Insurer**, including but not limited to negotiating a settlement. The **Insureds** shall give the **Insurer** full cooperation and such information as it may reasonably require. Upon the **Insurer's** request, the **Insureds** shall attend proceedings, hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits.

The **Insurer** may make any settlement of any **Claim** against an **Insured** which the **Insurer** deems expedient, subject to such **Insured's** written consent. If any **Insured(s)** withhold(s) consent to such settlement, the **Insurer's** liability for all **Loss** as a result of such **Claim** shall not exceed the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer**.

If as a result of any **Claim** an **Insured** incurs both **Loss** covered under this Policy and loss not covered under this Policy, either because such **Claim** is made against both the **Insured** and others or because such **Claim** includes both covered and uncovered matters, then such amount shall be allocated between covered **Loss** and uncovered loss based on the relative legal and financial exposures of the parties to such covered and uncovered matters, and in the event of a settlement, also based on the relative benefit to the parties from settlement of such covered and uncovered matters.

In the event that the **Insurer** and the **Insureds** cannot agree as to the amount of **Defense Costs** to be advanced under the Policy, then the **Insurer** shall advance **Defense Costs** which the **Insurer** believes to be covered under this Policy until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and applicable law.

**SECTION XI**

DISCOVERY PERIOD.

Except as provided below in this Section XI, if the **Insurer** shall refuse to renew this Policy, the **Named Company** shall have the right, upon payment of the Discovery Period Premium stated in Item 7(a) of the Declarations, to a continuation of the coverage afforded by this Policy for the Additional Period stated in Item 7(b) of the Declarations following the effective date of such nonrenewal (herein referred to as the "Discovery Period"), but only to the extent a **Claim** is first made against the **Insureds** during the Discovery Period for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this Policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within thirty (30) days after the effective date of nonrenewal.

The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This Section and the rights contained herein shall not apply as a result of a renewal quotation with different terms and conditions than the expiring Policy.

ARCH0002446

## SECTION XII

CANCELLATION.

This Policy may be canceled by the **Named Company** by surrender thereof to the **Insurer** or any of its authorized representatives or by mailing to the **Insurer** written notice stating when thereafter the cancellation shall be effective.

This Policy may be canceled by the **Insurer** for non-payment of premium by mailing to the **Named Company** at the address shown in the Declarations written notice stating when not less than 10 days thereafter such cancellation shall be effective.

This Policy may be canceled by agreement of the **Insurer** and the **Named Company**.

The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**.

If the **Named Company** cancels this Policy, earned premium shall be the customary short rate amount of the annual premium, and if the **Insurer** cancels this Policy, earned premium shall be the pro rata amount of the annual premium; provided, however, if at the time of cancellation the Limit of Liability has been exhausted, the entire premium shall be considered earned. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. Mailing of the **Insurer's** check or the check of its representative shall be sufficient tender of any refund of premium due to the **Named Company**.

## SECTION XIII

CHANGE IN CONTROL OF THE **NAMED COMPANY**.

Immediately upon the occurrence of any of the following:

(a)     the **Named Company** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert;

(b)     any person or entity or group of persons and/or entities acting in concert shall acquire securities which result in ownership by such person(s) or group(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors or equivalent positions of the **Named Company**; or

(c)     the appointment of a receiver, conservator, trustee, liquidator or rehabilitator or any similar official for or with respect to the **Named Company**

(any of the above events are herein referred to as the "Transaction")

then, this Policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective date of the Transaction, but there shall be no coverage afforded by any provision of this Policy for any actual or alleged **Wrongful Act** occurring after the effective date of the Transaction. This Policy may not be canceled after the effective date of the Transaction and the entire premium for this Policy shall be deemed earned as of such date.

The **Named Company** shall give the **Insurer** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.

ARCH0002447

## SECTION XIV

SC 09.11.2006

SUBROGATION.

In case of payment of **Loss** by the **Insurer** hereunder, the **Insurer** shall be subrogated to the amount of such payment to the **Insured's** right of recovery against any other person or organization for such **Loss**, and the **Insured** shall execute all papers required, and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of the **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this Policy unless such **Insured** has committed a deliberate criminal act, or deliberate fraudulent act, or obtained any profit or advantage to which such **Insured** was not legally entitled, and as to any of the foregoing, only as evidenced by a written statement or written admission by such **Insured** or a judgment or other final adjudication in the underlying action or in a separate action, alternative dispute resolution process (including one pursuant to Section XVI) or other proceeding.

Any recovery (after payment of expenses incurred to obtain the recovery) with respect to a **Loss** shall be used to reduce the **Loss**, and so much of such recovery shall be paid to the **Insurer** as will reduce the **Loss** ultimately borne by the **Insurer** to what it would have been had the recovery preceded any payment of such **Loss** by the **Insurer**.

## SECTION XV

OTHER INSURANCE.

Such insurance as is provided by this Policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this Policy. This Policy shall also be specifically excess over any other valid and collectible insurance pursuant to which any other **Insurer** has a duty to defend a **Claim** for which this Policy may be obligated to pay **Loss**.

## SECTION XVI

ARBITRATION.

Only if requested by the **Insured**, the **Insurer** shall submit any dispute, controversy or claim arising out of or relating to this Policy or the breach, termination or invalidity thereof to final and binding arbitration pursuant to such rules and procedures as the parties may agree. If the parties cannot so agree, the arbitration shall be administered by the American Arbitration Association in accordance with its then prevailing commercial arbitration rules. The arbitration panel shall consist of one arbitrator selected by the **Insured**, one arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two arbitrators. In any such arbitration, each party will bear its own legal fees and expenses.

## SECTION XVII

NOTICE AND AUTHORITY.

It is agreed that the **Named Company** shall act on behalf of its **Subsidiaries** and all **Insured Persons** with respect to giving notice of **Claim**, giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the receipt and acceptance of any endorsements issued to form a part of this Policy and the exercising or declining to exercise any right to a Discovery Period.

ARCH0002448

## SECTION XVIII

ASSIGNMENT.

No assignment of interest under this Policy shall be valid, unless the written consent of the **Insurer** is endorsed hereon.

## SECTION XIX

ACTION AGAINST **INSURER**.

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, and the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured,** the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of any insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the **Insurer** as a party to any action against the **Insured** to determine the **Insurer** be impleaded by the **Insured** or his legal representative. Bankruptcy or insolvency of the **Insured** or the **Insured's** estate shall not relieve the **Insurer** of any of its obligations hereunder.

## SECTION XX

REPRESENTATIONS.

By acceptance of this Policy the **Insureds** agree that the statements in the **Application** are their agreements and representations and that this Policy is issued in reliance upon the truth of such agreements and representations, which are deemed material to the acceptance of the risk or the hazard assumed by the **Insurer** under the Policy.

If any **Insured** has knowledge or information, as of the effective date of the **Application**, of any act, error, omission or circumstance which may give rise to a **Claim** and which is required to be disclosed in the **Application,** whether or not actually disclosed in the **Application**, any **Claim** subsequently arising therefrom shall be excluded from coverage under this Policy; provided this paragraph does not limit and is without prejudice to any other rights, defenses and remedies available to the **Insurer**.

## SECTION XXI

ENTIRE AGREEMENT.

This Policy, including the Declarations, **Application** and Endorsements, embodies all agreements existing between the **Named Company** and the **Insurer** or any of its agents relating to this insurance.

## SECTIONXXII

CAPTIONS.

The headings or captions used in this Policy, including any Endorsements, are for the purposes of reference only and shall not otherwise affect the meaning of this Policy

ARCH0002449

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

SC 09.11.2006

## ADDITIONAL INSURED(S) ENDORSEMENT (EXCESS)

In consideration of the premium charged, it is hereby understood and agreed that:

The term **Insured(s)** is amended to include the following entity(ies):

Centurion Real Estate Partners, LLC

Centurion Real Estate Management, LLC

Centurion Real Estate Investors I, LLC

Centurion Real Estate Investors II, LLC

Centurion Real Estate Investors IIA, LLC

Centurion Real Estate Investors IV, LLC

Concorde 65 LLC

Concorde Storage LLC

Centurion Europe Investors I SCI

Mission Place LLC

All other terms and conditions of this Policy remain unchanged.

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Endorsement Number:1

Policy Number: PCD0015105-00

Named Insured: Centurion Real Estate Partners, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 5/03/2006

00 ML0207 33 03 04
2-13000

Page 1 of 1

ARCH0002450

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**
SC 99.11.2006

**ENDORSEMENT DELETING EXCLUSION IV.1.(I)**

In consideration of the premium charged, it is hereby understood and agreed that **SECTION IV EXCLUSIONS** 1.(I) is deleted in its entirety.

---

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

---

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:2

Policy Number: PCD0015105-00

Named Insured: Centurion Real Estate Partners, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 5/03/2006

00 ML0207 33 03 04
2- 14176

ARCH0002451

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.** SC 29.11.2006

**ENDORSEMENT AMENDING SECTION XX (PRIVATE COMPANY)**

In consideration of the premium charged, it is hereby understood and agreed that **SECTION XX** REPRESENTATIONS is deleted in its entirety and replaced with the following:

**SECTION XX**

By acceptance of this Policy the **Insureds** agree that the statements in the **Application** are their agreements and representations and that this Policy is issued in reliance upon the truth of such agreements and representations, which are deemed material to the acceptance of the risk or hazard assumed by the **Insurer** under the Policy. No knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

If the **Application** contains any statements or representations that are untrue, then:

(a) solely with respect to Coverage A, this Policy shall not be rescinded by the **Insurer** in whole or in part for any reason; provided, however, if the **Private Company** is permitted or required by law to indemnify an **Insured Person** who knew the facts that were not truthfully disclosed, or to advance **Defense Costs** on behalf of such **Insured Person**, and does not in fact do so other than because of **Financial Impairment**, then this Policy shall be void as to such **Insured Person** under Coverage A;

(b) this Policy shall be void as to the **Private Company** (i) under Coverage B if the indemnified **Insured Person** knew the facts that were not truthfully disclosed, and (ii) under Coverages B and C if an **Executive Officer** of any **Private Company** knew the facts that were not truthfully disclosed, whether or not such **Insured Person** or **Executive Officer** knew of such untruthful disclosure in the **Application**.

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:3

Policy Number: PCD0015105-00

Named Insured: Centurion Real Estate Partners, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 5/03/2006

00 ML0207 33 03 04
2- 14176

ARCH0002452

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

SC 09.11.2006

# NEW YORK AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under:

**Directors and Officers Liability Insurance Policy – Broad Form Individual Non-Indemnifiable Loss**
**Directors and Officers Liability Insurance Policy – Individual Non-Indemnifiable Loss**
**Independent Directors Liability Insurance Policy – Individual Non-Indemnifiable Loss**

If this endorsement applies to the **INDIVIDUAL NON-INDEMNIFIABLE LOSS INDEPENDENT DIRECTORS LIABILITY INSURANCE POLICY**, the term **Insured Person(s)**, where ever used in this endorsement, shall be replaced by the term **Independent Director(s)**.

I.      Section X., CANCELLATION is deleted in its entirety and replaced with the following:

CANCELLATION AND NONRENEWAL

**Cancellation**

1. CANCELLATION BY THE INSURER DURING FIRST SIXTY DAYS.

During the first 60 days of the first year that this Policy shall be in effect, no cancellation of this Policy by the **Insurer** shall become effective until 20 days after written notice is mailed or delivered to the **Named Corporation** by the **Insurer** at the mailing address shown in the Policy, and to the **Named Corporation's** authorized agent or broker, if any, unless such cancellation is due to the reasons specified in Section 3 of this endorsement. If such cancellation is due to the reasons specified in Section 3 of this endorsement, such cancellation shall not be effective until 15 days after written notice is mailed or delivered to the **Named Corporation** by the **Insurer** at the mailing address shown in the Policy, and to the **Named Corporation's** authorized agent or broker, if any.

2. CANCELLATION BY THE INSURER AFTER 60 DAYS.

After this Policy shall have been in effect for 60 days, no cancellation of this Policy by the **Insurer** shall become effective until 15 days after written notice is mailed or delivered to the **Named Corporation** by the **Insurer** at the mailing address shown in the Policy, and to the **Named Corporation's** authorized agent or broker, if any. Such cancellation may be only for one or more of the reasons set forth in Section 3 hereof.

3. PERMISSIBLE REASONS FOR CANCELLATION ON 15 DAYS' NOTICE.

This Policy may be canceled with 15 days notice for one or more of the following reasons:

( i )      non-payment of premium;

( ii )     conviction of an **Insured** of a crime arising out of acts increasing the hazard insured against;

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

ARCH0002453



( iii )    discovery of fraud or material misrepresentation in the application for the Policy or in the presentation of a **Claim** thereunder;

SC 99.11.2006

( iv )    after issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any Policy condition by an **Insured**, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current **Policy Period**;

( v )    cancellation is required pursuant to a determination by the New York Superintendent of Insurance that continuation of the present premium volume of the **Insurer** would jeopardize the **Insurer's** solvency or be hazardous to the interests of policyholders of the **Insurer**, its creditors or the public; and

( vi )    a determination by the Superintendent of Insurance that the continuation of the Policy would violate, or would place the **Insurer** in violation of, any provision of the New York Insurance Law.

4. RETURN OF UNEARNED PREMIUIM

In the event of cancellation by the **Named Corporation**, the **Insurer** shall refund the unearned premium on the customary short rate basis within thirty (30) days of the latter of the effective date of the cancellation or the date of delivery of the **Named Corporation's** notice of intent to cancel. In the event of cancellation by the **Insurer**, the **Insurer** shall refund the paid premium less the earned portion thereof within (10) business days after the effective date of cancellation, subject always to the retention by the **Insurer** of any minimum premium stipulated in the Policy (or proportion thereof previously agreed upon) in the event of cancellation whether by the **Insurer** or the **Named Corporation**.

**Nonrenewal**

1. NON-RENEWAL/CONDITIONAL RENEWAL OF THIS POLICY BY THE INSURER.

(a) This Policy shall remain in full force and effect pursuant to the same terms, conditions and rates unless a written notice is mailed or delivered to the **Named Corporation** and its authorized agent or broker, if any, by the **Insurer**, indicating the **Insurer's** intention:

( i )    not to renew the Policy;

( ii )    to condition its renewal upon change of limits, change in type of coverage, reduction of coverage, increased deductible or addition of any exclusion, or upon increased premiums in excess of ten percent; or

( iii )    that the Policy will not be renewed or will not be renewed upon the same terms, conditions or rates; such alternative renewal notice will advise the **Named Corporation** that a second notice shall be mailed or delivered at a later date indicating the **Insurer's** intention as specified in subsections ( i ) or ( ii ) hereof and that coverage shall continue on the same terms, conditions and rates as the expiring policy, until the later of the expiration date or 60 days after the second notice is mailed or delivered. The aggregate limit of expiring policy is increased in proportion to any policy extension as a result of late notice.

(b) Any notice as described in subsection ( a ) hereof shall contain the specific reason or reasons for non-renewal or conditional renewal, and shall set forth the amount of any premium increase and the nature of any other proposed changes. Such notice shall be mailed or delivered at least 60 but not more than 120 days in advance of the end of the **Policy Period**.

(c) This section shall not apply if the **Named Corporation**, or any agent or broker authorized by the **Named Corporation**, or another insurer of the **Named Corporation**, mails or delivers written notice to the **Insurer** that the Policy has been replaced or is no longer required.

ARCH0002454

II.    Section IX., DISCOVERY PERIOD, is deleted in its entirety and replaced with the following

1.    In the case of cancellation or non-renewal of this policy by the **Named Corporation** or the **Insurer** for any reason other than listed below:

    (a) decrease in limits,

    (b) increased deductible,

    (c) nonpayment of premium or fraud when this Policy has been in effect for less than one year

    (d) new exclusion or any other change in coverage less favorable to the **Named Corporation,**

the **Named Insured** shall have the right, subject to the other terms and conditions of this Policy, or any endorsement attached thereto, to have an endorsement issued extending the time during which **Claims** can be reported, but only to the extent a **Claim** is first made against the **Insured Persons** during this extended reporting time for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this Policy (a "Discovery Period").

2.    AUTOMATIC DISCOVERY PERIOD TERMS

An automatic sixty (60) day Discovery Period option, effective at the termination of the **Policy Period**, will be provided by the **Insurer** at no additional cost unless this insurance is replaced with the same or similar insurance issued by the **Insurer**. The limits available under this extension shall be part of, and not in addition to, the limits available under the expiring **Policy Period**. Coverage provided by this automatic Discovery Period shall be specific excess over any replacement policy providing the same or similar language.

3.    ADDITIONAL DISCOVERY PERIOD TERMS

(a) Within thirty (30) days after termination of coverage the **Insurer** will advise the **Named Corporation** in writing of the automatic Discovery Period coverage and the availability of, the premium for, and the importance of purchasing additional Discovery Period coverage or the **Named Corporation's** right to a free Discovery Period option as may be provided by the Policy.

(b) The **Named Corporation** shall have the greater of sixty (60) days from the effective date of termination of coverage, or thirty (30) days from the date of mailing or delivery of the advice required by paragraph 3(a) to submit written acceptance of Discovery Period coverage and the payment of any premiums due. The premium due for Discovery Period coverage shall be as follows:

        90% of the full annual premium for this policy, for a period of twelve (12) months

        175% of the full annual premium for this policy, for a period of twenty-four (24) months

        200% of the full annual premium for this policy, for a period of thirty-six (36) months

(c) For the purpose of determining the length of the Discovery Period, the coverage required by 2. above shall be included in the reporting period.

4. SEPARATE AGGREGATE LIMIT OF LIABILITY

A separate aggregate **Limit of Liability** equal to the limit specified on the Declarations and any endorsement thereto shall apply to any **Claim** or **Claims** reported during the Discovery Period (except for the automatic sixty (60) day Discovery Period required by section III, part 2. automatic Discovery Period above). The limit applicable to each **Claim** shall not be increased or changed.

5. ADDITIONAL EXTENDED REPORTING TERMS (LIQUIDATION, ETC.)

(a) A claims-made policy issued to a corporation, partnership or other entity shall provide Discovery Period coverage upon termination of coverage to any person covered under the policy, if:

ARCH0002455

(i) such entity has been placed in liquidation or bankruptcy or permanently ceases operations;

(ii) the entity or its designated trustee does not purchase Discovery Period coverage; and

SC 09.11.2006

(iii) such person requests Discovery Period coverage in writing within one-hundred twenty (120) days of the termination of coverage.

(b) The **Insurer** shall have no obligation to provide any notice to any such person of the availability of the Discovery Period coverage required by paragraph III.5.a.i of this endorsement.

(c) The **Insurer** may charge the person for whom Discovery Period coverage is provided a premium commensurate with such coverage.

III. Section XVII., ACTION AGAINST INSURER is deleted in it entirety and replaced by the following:

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, but not until the amount of the **Independent Director's** obligation to pay shall have been determined either by judgment against the **Independent Director** or by written agreement of the **Independent Director**, the claimant and the **Insurer**.

IV. The policy is amended with the addition of the following terms and conditions:

## SECTION XXI

NOTICE OF CLAIM

Notice given by or on behalf of the **Named Corporation**, or written notice by or on behalf of the injured person or any other claimant to any licensed agent of the **Insurer**, with particulars sufficient to identify the **Named Corporation**, shall be deemed notice to the **Insurer**.

Notwithstanding anything in the Policy to the contrary, failure to give any notice required by the Policy within the time prescribed therein shall not invalidate any **Claim** made by the **Named Corporation** or by any other claimant, if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

## SECTION XXII

RETROACTIVE OR PRIOR ACTS DATES

A retroactive or prior acts date may not be changed during the term of the claims-made relationship or any Discovery Period.

## SECTION XXIII

PREJUDGMENT INTEREST

Prejudgment interest where payable under this Policy, will be in addition to the **Limits of Liability** stated in the declarations.

## SECTION XXIV

TRANSFER OF DUTIES WHEN LIMITS OF LIABILITY ARE USED UP

ARCH0002456

1. If the **Insurer** concludes that, based on incidents, occurrences, offenses, **Claims** or suits which have been reported to the **Insurer** and to which this Policy may apply, that any limit (each **Claim**, each incident, each occurrence, aggregate, or other) under the Policy is likely to be used up in the payment of judgments or settlements, the **Insurer** will notify the **Named Corporation**, in writing, to that effect.

2. When a **Limit of Liability** has actually been used up in the payment of judgments or settlements:

   (a) The **Insurer** will notify the **Named Corporation**, in writing, as soon as practicable, that:

       (i)    such a limit has actually been used up; and

       (ii)    the **Insurer's** duty to defend suits seeking damages subject to that limit has ended.

   (b) The **Insurer** will initiate, and cooperate in, the transfer of control, to the **Named Corporation**, of all **Claims** and suits seeking damages which are subject to that limit and which are reported to the **Insurer** before that limit is used up. The **Named Corporation** must cooperate in the transfer of control of said **Claims** and suits.

   The **Insurer** agrees to take such steps, as its deems appropriate, to avoid a default in, or continue the defense of, such suits until such transfer is completed, provided the **Named Corporation** is cooperating in completing such transfer. The **Insurer** has no obligation to take any action whatsoever with respect to any **Claim** or suit seeking damages that would have been subject to that limit, had it not been used up, if the **Claim** or suit is reported to the **Insurer** after that **Limit of Liability** has been used up.

   (c) The **Named Corporation** and any other **Insured** involved in a suit seeking damages subject to that limit, must arrange for the defense of such suit within such time period as agreed to between the appropriate **Insured** and us. Absent any such agreement, arrangements for the defense of such suit must be made as soon as practicable.

3. The **Named Corporation** will reimburse the **Insurer** for expenses the **Insurer** incurs in taking those steps it deems appropriate in accordance with paragraph 2.b. above.

   The duty of the **Named Corporation** to reimburse the **Insurer** will begin on:

   (a) the date on which the applicable limit of insurance is used up, if the **Insurer** sent notice in accordance with paragraph 1. above; or

   (b) the date on which the **Insurer** sent notice in accordance with paragraph 2.a. above, if the **Insurer** did not send notice in accordance with paragraph 1. above.

4. The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of the **Insurer's** duty to defend, will not be affected by the **Insurer's** failure to comply with any of the provisions of this condition.

ARCH0002457

SC 09.11.2004

All other terms and conditions of this Policy shall remain unchanged.

Endorsement Number:4

Policy Number: PCD0015105-00

Named Insured: Centurion Real Estate Partners, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 5/03/2006



# TERRORISM COVERAGE DISCLOSURE NOTICE

### TERRORISM COVERAGE PROVIDED UNDER THIS POLICY

The Terrorism Risk Insurance Act of 2002 and amendments thereto established a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provides that, to be certified, an act of terrorism must cause losses that exceed five million dollars. The act of terrorism must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States.

In accordance with the Terrorism Risk Insurance Act of 2002 and amendments thereto, we are required to offer you coverage for losses resulting from an act of terrorism **that is certified under the federal program** as an act of terrorism committed by an individual(s) acting on behalf of a foreign person or foreign interest. The policy's other provisions will still apply to such an act. Your decision is needed on this question: do you choose to pay the premium for terrorism coverage stated in this offer of coverage, or do you reject the offer of coverage and not pay the premium? You may accept or reject this offer.

If your policy provides commercial property coverage, in certain states, statutes or regulations may require coverage for fire following an act of terrorism. In those states, if terrorism results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to Legal Liability coverage forms or Leasehold Interest coverage forms.

**Your premium <u>will</u> include the additional premium for terrorism as stated in the section of this Notice titled DISCLOSURE OF PREMIUM.**

### DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. **The federal share equals 90% in 2006 and 85% in 2007 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.**

### DISCLOSURE OF PREMIUM

Your premium for terrorism coverage is: **Redacted**
(This charge/amount is applied to obtain the final premium.)

**You may choose to reject the offer by signing the statement below and returning it to us. Your policy will be changed to exclude the described coverage.** If you chose to accept this offer, this form does not have to be returned.

### REJECTION STATEMENT

I hereby decline to purchase coverage for certified acts of terrorism. I understand that an exclusion of certain terrorism losses will be made part of this policy.

Policyholder/Legal Representative/Applicant's
Signature

Centurion Real Estate Partners, LLC
Named Insured

Print Name of Policyholder/Legal
Representative /Applicant

Arch Insurance Company
Insurance Company

Date:

Policy Number: PCD0015105-00

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

00 MLT0027 00 02 06
2 - 14176

Page 1 of 1

ARCH0002459

# EXHIBIT 6

EXHIBIT 6



# Arch
## Insurance Group

## ARCH INSURANCE COMPANY
### A Missouri Corporation

ADMINISTRATIVE OFFICE
One Liberty Plaza
53rd Floor
New York, NY 10006
Tel: 800-817-3252

HOME OFFICE
3100 Broadway, Suite 511
Kansas City, MO 64111

## PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY

**NOTICE: THIS IS A CLAIMS MADE AND REPORTED POLICY. EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THIS POLICY IS LIMITED TO LIABILITY FOR WRONGFUL ACTS FOR WHICH CLAIMS ARE FIRST MADE WHILE THE POLICY IS IN FORCE AND WHICH ARE REPORTED TO THE INSURER NO LATER THAN SIXTY (60) DAYS AFTER THE TERMINATION OF THE POLICY. PLEASE READ AND REVIEW THE POLICY CAREFULLY.**

**THE LIMIT OF LIABILITY AVAILABLE TO PAY LOSS, INCLUDING JUDGMENT OR SETTLEMENT AMOUNTS, IS REDUCED BY AMOUNTS INCURRED FOR DEFENSE COSTS. ALL LOSS, INCLUDING JUDGMENTS, SETTLEMENTS AND DEFENSE COSTS, ARE SUBJECT TO THE APPLICABLE RETENTION AMOUNT.**

**THE POLICY DOES NOT PROVIDE FOR ANY DUTY OR OBLIGATION ON THE PART OF THE INSURER TO DEFEND THE INSURED PERSONS OR THE PRIVATE COMPANY.**

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

## DECLARATIONS

Terms appearing in **bold** in these Declarations are defined in the Policy.

| | | |
|---|---|---|
| Policy No.: PCD0015105-01 | | |
| Item 1. | **Named Company**:<br>Principal Address: | Centurion Real Estate Partners, LLC<br>595 Madison Avenue, 21st Floor<br>New York, NY 10022      **COPY** |
| Item 2. | **Policy Period**:<br>From: 5/03/2007<br><br>To:   5/03/2008 | <br>at 12:01 a.m. (local time at the address stated in Item 1.)<br><br>at 12:01 a.m. (local time at the address stated in Item 1.) |

05 PCDD001 00 09 03
2 - 14176

Page 1 of 2

ARCH0001985

| Item 3. | Limit of Liability: | $2,000,000 | |
| | | Aggregate for all Coverages combined (including **Defense Costs**) | |

| Item 4. | Retention: | for **Loss** arising from each **Claim** and all **Claims** alleging the same **Wrongful Act** or **Interrelated Wrongful Acts**: | |
| | | | |
| | | (a) **Claims** Other than **Employment Claims**: | |
| | | Coverage A | NONE |
| | | Coverage B | $75,000 |
| | | Coverage C | $75,000 |
| | | | SC 07/02/2007 |
| | | (b) **Employment Claims**: | |
| | | Coverage A | NONE |
| | | Coverage B | $25,000 |
| | | Coverage C | $25,000 |

| Item 5. | Pending and Prior **Claim** Date: | 5/03/2005 |

| Item 6. | Policy Premium: | |
| | Premium Attributable to Terrorism Risk Insurance: | |
| | (Included in Policy Premium  ☒) | Redacted |
| | (In addition to Policy Premium  ☐) | |

| Item 7. | Discovery Period | |
| | (a) Additional Premium | Redacted |
| | (b) Additional Period | One year |

| Item 8. | Endorsements (effective at inception): See attached Schedule of Forms and Endorsements |

| Item 9. | Notices to **Insurer**: |

**Notice Of Claim(s) or Potential Claim(s)**

| To Be Sent To: | All Other Notices To Be Sent To: |
| Executive Assurance Claims | Executive Assurance Underwriting |
| Arch Insurance Company | Arch Insurance Company |
| One Liberty Plaza, 53rd Floor | One Liberty Plaza, 53rd Floor |
| New York, NY 10006 | New York, NY 10006 |
| Fax: (646) 746-8111 | Fax: (212) 651-6499 |

The **Insurer** has caused this Policy to be signed and attested to by its authorized officers, but it shall not be valid unless also signed by another duly authorized representative of the **Insurer**.

_____          6-18-2007
Authorized Representative                          Date

Ralph E. Jones III
President

Secretary

**COPY**

ARCH0001986

# SCHEDULE OF FORMS AND ENDORSEMENTS

| **INSURED:** Centurion Real Estate Partners, LLC | **TERM:** 5/03/2007 to 5/03/2008 |
|---|---|
| **POLICY NUMBER:** PCD0015105-01 | |

| ENDT. NO. | FORM NO. | TITLE |
|---|---|---|
| | 00 PCD0048 00 03 03 | PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY |
| 1 | 00 ML0207 00 11 03 | ADDITIONAL INSURED(S) ENDORSEMENT (EXCESS) |
| 2 | 00 ML0207 00 11 03 | ENDORSEMENT DELETING EXCLUSION IV.1.(I) |
| 3 | 00 ML0207 00 11 03 | ENDORSEMENT AMENDING SECTION XX (PRIVATE COMPANY) |
| 4 | 00 MLE0002 33 12 04 | NEW YORK AMENDATORY ENDORSEMENT |
| | 00 MLT0027 00 02 06 | TERRORISM COVERAGE DISCLOSURE NOTICE |
| | 00 MLT0038 00 01 07 | ADDENDUM TO TERRORISM DISCLOSURE NOTICE |

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**



00 ML0207 33 03 04                              Page 1 of 1
2- 14176

ARCH0001987

# PRIVATE COMPANY MANAGEMENT LIABILITY INSURANCE POLICY

In consideration of the payment of the premium set forth in Item 6 of the Declarations of this Policy, which are attached to and are a part of this Policy, and in reliance upon the statements in the **Application**, which is deemed attached to and is a part of this Policy, and subject to the Limit of Liability set forth in Item 3 of the Declarations of this Policy, and subject to all of the terms and conditions of this Policy, the Insurer designated in the Declarations (hereinafter called "the **Insurer**") agrees with the **Insureds**, as follows:

**SECTION I**

COVERAGE.

COVERAGE A: DIRECTORS AND OFFICERS INSURANCE

> The **Insurer** will pay on behalf of the **Insured Persons** a **Loss** for which the **Insured Persons** are not indemnified and which the **Insured Persons** shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or Discovery Period, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

COVERAGE B: PRIVATE COMPANY LIABILITY ARISING FROM INDEMNIFIABLE LOSS

> The **Insurer** will pay on behalf of the **Private Company** a **Loss** for which the **Private Company** has, to the extent permitted or required by law, indemnified the **Insured Persons**, and which the **Insured Persons** have become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or Discovery Period, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

COVERAGE C: PRIVATE COMPANY LIABILITY

The **Insurer** will pay on behalf of the **Private Company** a **Loss** for which the **Private Company** shall become legally obligated to pay as a result of a **Claim** first made during the **Policy Period** or Discovery Period, if applicable, against the **Private Company** for a **Wrongful Act** which takes place during or prior to the **Policy Period**.

As a condition precedent to any coverage under Coverages A, B and C, the **Insureds** shall report **Claims** to the **Insurer** in accordance with Section IX. The **Insurer** shall, in accordance with Section X, advance covered **Defense Costs** as a result of such **Claim** prior to its final disposition.

**SECTION II**

> NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

DEFINITIONS.

All terms defined in this Policy appear in **bold**.

(a)     "**Application**" means:

COPY

00 PCD0048 00 03 03
· 2 - 14176

ARCH0001988

(1)    each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this Policy or the underwriting of any other directors and officers and/or corporation and/or employment practices (or equivalent) liability policy issued by the **Insurer,** or any of its affiliates, of which this Policy is a renewal, replacement or which it succeeds in time; and

(2)    any public documents filed by the **Private Company** with any federal, state, local, or foreign regulatory agency.

SC 07/02/2007

(b)    "**Benefit**" means **Stock Benefits** or any perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with an employee benefit plan and any other similar payment, provided **Benefits** shall not include salary or wages or non-deferred cash incentive compensation.

(c)    "**Claim**" means:

    (1)    a written demand against an **Insured** for monetary, non-monetary or injunctive relief; or

    (2)    a civil or arbitration proceeding against an **Insured** for monetary, non-monetary or injunctive relief which is commenced by:

        (i)    service of a complaint or similar pleading; or

        (ii)    receipt or filing of a notice of charges; or

    (3)    a formal administrative or regulatory adjudicatory or investigative proceeding against any **Insured Person** or, with respect to any **Wrongful Act** described in the definition of **Employment Claim,** against the **Private Company** commenced by the filing of a notice of charge, formal investigative order or similar document, including without limitation any proceeding by the Equal Employment Opportunity Commission or other similar governmental authority;

including without limitation an **Employment Claim;** provided **Claim** shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

(d)    "**Defense Costs**" means reasonable and necessary fees, costs and expenses consented to by the **Insurer** (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the defense and appeal of a **Claim** against the **Insureds,** but shall not include salaries, wages, overhead or benefit expenses associated with **Insured Persons** or employees of the **Private Company.**

(e)    "**Employment Claim**" means any **Claim** which in whole or in part is brought and maintained by or on behalf of any past, present or prospective employee of the **Private Company** for a **Wrongful Act** in connection with any actual, alleged or constructive wrongful dismissal, discharge or termination of employment; breach of any oral, written or implied employment contract or quasi-employment contract; employment-related misrepresentation; violation of any federal, state or local statute, regulation, ordinance, common law or public policy concerning employment or discrimination in employment; sexual or other illegal workplace harassment (including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or communications); wrongful failure to employ or promote; wrongful discipline; wrongful deprivation of a career opportunity; wrongful demotion or adverse change in the terms, conditions or status of employment; failure to grant tenure; failure to adopt adequate workplace or employment policies and procedures; illegal retaliatory treatment of employees; negligent hiring; negligent evaluation of employees; wrongful reference; employment-related invasion of privacy; employment-related

COPY

00 PCD0048 00 03 03
2 - 14176

Page 2 of 14

ARCH0001989

defamation; employment-related wrongful infliction of emotional distress; or other employment-related torts.

(f)     "**Executive Officer(s)**" means with respect to any **Company** its chairperson, president, chief executive officer, chief operating officer, chief financial officer, in-house general counsel and, solely with respect to an **Employment Claim**, director of human resources or similar position.

(g)     "**Financial Impairment**" means the status of the **Private Company** resulting from:

(1)     the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Private Company**, or

(2)     the **Private Company** becoming a Debtor-In-Possession.

(h)     "**Insured Person(s)**" means:

(1)     any person who has been, now is or shall become a duly elected or appointed director, officer, general counsel, risk manager, and in the case of a limited liability company, member of the management board (or equivalent position), of the **Private Company**;

(2)     in the event a **Subsidiary** operates outside the United States, then the term "**Insured Person(s)**" also means any person who has held, now holds or shall hold those titles, positions or capacities in such foreign **Subsidiary** which are equivalent to a position listed in (1) above in an organization incorporated within the United States; and

(3)     only with respect to an **Employment Claim**, any other person not described in (1) or (2) above who has been, now is or shall become an employee of the **Private Company**, including any full-time, part-time, seasonal or temporary employee; provided such other employee shall not be considered an **Insured Person** for purposes of Exclusion (f) in Section IV below.

(i)     "**Insured(s)**" means:

(1)     **Insured Persons**; and

(2)     with respect to Coverages B and C only, the **Private Company**.

(j)     "**Interrelated Wrongful Acts**" means **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally connected facts, circumstances, situations, events, transactions or causes.

(k)     "**Loss**" means damages, judgments (including pre/post-judgment interest on a covered judgment), settlements and **Defense Costs** for which the **Insureds** become legally obligated to pay; however, **Loss** shall not include (i) civil or criminal fines or penalties imposed by law, (ii) taxes, (iii) any amount that represents or is substantially equivalent to an increase in the consideration paid or proposed to be paid in connection with any purchase of any securities or assets, or any plaintiffs' counsel fees and expenses in any **Claim** seeking such increase in consideration, (iv) any amount for which the **Insureds** are not financially liable or for which the claimants are without legal recourse to the **Insureds**, (v) any amount that represents or is substantially equivalent to disgorgement or restitutionary or rescissionary damages, or forfeiture of any profits or remuneration, (vi) any amount incurred by an **Insured Person** in connection with any proceeding or investigation that is not then a **Claim** against such **Insured Person**, even if such amount also benefits the defense of a covered **Claim** or if such proceeding or investigation subsequently gives rise to a covered **Claim**, (vii) costs incurred by the **Private Company** to

ARCH0001990

comply with any injunctive or other non-monetary relief or an agreement to provide such relief, or (viii) matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

**Loss** shall specifically include (subject to this Policy's other terms, conditions and limitations, including, but not limited to, exclusions relating to profit or advantage, deliberate fraud or deliberate criminal acts) punitive, exemplary and multiple damages, or liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act. Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages.

(l)     **"Named Company"** means the company designated in Item 1 of the Declarations.

(m)    **"Policy Period"** means the period specified in Item 2 of the Declarations, subject to prior termination in accordance with Section XII.

(n)    **"Private Company"** means the **Named Company** and any **Subsidiary** thereof.

(o)    **"Retaliation"** means retaliatory treatment against an employee of the **Private Company** on account of such individual:

    (1)    exercising his or her rights under law, including but not limited to rights under any workers compensation laws, the Family and Medical Leave Act, or the Americans with Disabilities Act;

    (2)    refusing to violate any law;

    (3)    having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law by the **Private Company**;

    (4)    disclosing or threatening to disclose to a superior, to any governmental authority or to the public any alleged violations of law; or

    (5)    filing any claim against the **Private Company** under the Federal False Claims Act or any other similar "whistle blower" federal, state or local statutory law or common law anywhere in the world.

(p)    **"Stock Benefits"** means any offer, promise, grant or issuance by the **Private Company** to an **Insured Person** of stock, stock warrants, stock options or other securities of the **Private Company**, or any payment or instrument the amount or value of which is derived from the value of securities of the **Private Company**.

(q)    **"Subsidiary"** means:

    (1)    a not-for-profit organization exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended) sponsored exclusively by a **Private Company**;

    (2)    a corporate organization with respect to which the **Named Company** owns, either directly or indirectly through one or more of its **Subsidiaries**, more than 50% of the outstanding securities representing the present right to vote for election of directors or equivalent positions; provided that if the corporate organization first becomes a **Subsidiary** as described in this paragraph (2) during the **Policy Period** and if its total consolidated assets as reflected in its then most recent consolidated financial statements total more than 10% of the total consolidated assets of the **Named Company** as reflected in the

ARCH0001991

**Named Company's** then most recent consolidated financial statements, then such organization and its **Insured Persons** shall be covered under this Policy only if within 90 days of such organization becoming a **Subsidiary,** the **Named Company** shall have provided the **Insurer** with full particulars of the new **Subsidiary** and paid any additional premium and agreed to any amendment of the provisions of this Policy required by the **Insurer** relating to such new **Subsidiary**.

An organization becomes a **Subsidiary** at the time the circumstances described in paragraph (1) or (2) above first apply to such organization. An organization ceases to be a **Subsidiary** at the time such circumstances no longer apply to such organization. SC 07/02/2007

In all events, coverage as is otherwise afforded under this Policy with respect to a **Claim** made against any a **Subsidiary** or its **Insured Persons** shall only apply for **Wrongful Acts** committed or allegedly committed after the effective time that such **Subsidiary** became a covered **Subsidiary** as provided above and prior to the time that such **Subsidiary** ceased to be a covered **Subsidiary**.

(r)     "Wrongful Act" means:

  (1)     any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by the **Insured Persons** in their respective capacities as such or, with respect to Coverage C, by the **Private Company**, or

  (2)     any other matter claimed against the **Insured Persons** solely by reason of their status as **Insured Persons**.

**SECTION III**

EXTENSIONS.

Subject otherwise to the terms hereof, this Policy shall cover **Loss** as a result of a **Claim** for a **Wrongful Act** of an **Insured Person** made against the estates, heirs, or legal representatives of such **Insured Person** if deceased, and the legal representatives of such **Insured Person** in the event of incompetency, insolvency or bankruptcy.

Subject otherwise to the terms hereof, this Policy shall cover **Loss** as a result of a **Claim** made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an **Insured Person** for a **Claim** arising solely out of his or her status as the spouse of such **Insured Person**, including a **Claim** that seeks damages recoverable from marital community property, property jointly held by an **Insured Person** and the spouse, or property transferred from an **Insured Person** to the spouse; provided, however, that this extension shall not afford coverage for a **Claim** for a **Wrongful Act** of the spouse, but shall apply only to a **Claim** arising out of a **Wrongful Act** of an **Insured Person**.

All terms of this Policy, including without limitation the Retention, applicable to **Loss** incurred by the **Insured Person** shall also apply to loss incurred by such **Insured Person's** estates, heirs, legal representatives or spouses.

**SECTION IV**

EXCLUSIONS.

1.     The **Insurer** shall not be liable under any Coverages to make any payment for **Loss** as a result of a **Claim** made against an **Insured**:

COPY

ARCH0001992

(a)     arising out of, based upon or attributable to the gaining of any profit, remuneration or financial advantage to which such **Insured** was not legally entitled, as evidenced by a written statement or written admission by such **Insured** or a judgment or other final adjudication in the underlying action or in a separate action, alternative dispute resolution process (including one pursuant to Section XVI) or other proceeding;

(b)     arising out of, based upon or attributable to the committing of any deliberate criminal or deliberate fraudulent act by such **Insured**, as evidenced by a written statement or written admission by such **Insured Person** or a judgment, ruling or other finding of fact in the underlying action or in a separate action, alternative dispute resolution process (including one pursuant to Section XVI) or other proceeding;

[For the purpose of determining the applicability of the foregoing Exclusions (a) and (b), the **Wrongful Acts** of and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**, and only the knowledge possessed by an **Executive Officer** shall be imputed to the **Private Company**.]

(c)     alleging, arising out of, based upon or attributable to:

(1)     any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given under any prior policy of which this Policy is a direct or indirect renewal or replacement; or

(2)     any **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in (1) above, constitute **Interrelated Wrongful Acts**;

(d)     alleging, arising out of, based upon or attributable to:

(1)     any demand, suit, proceeding or formal investigation pending on or prior to the date stated in Item 5 of the Declarations; or

(2)     any **Wrongful Act** alleged in such pending or prior demand, suit, proceeding or formal investigation, or any **Wrongful Act** whenever occurring, which together with any **Wrongful Act** alleged in such pending or prior demand, suit, proceeding or formal investigation, constitute **Interrelated Wrongful Acts**;

(e)     alleging, arising out of, based upon or attributable to any actual or alleged act or omission of the **Insured Persons** in their capacities as directors, officers, trustees, governors, employees, general counsel, risk manager or in the case of a limited liability company, members of the management board (or equivalent position), of any organization other than the **Private Company**, even if service in such capacity is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **Insured Person** by, the **Private Company**;

(f)     which is brought or maintained by, or on behalf of, or in the right of (whether such right is transferred or assigned by operation of law or otherwise) the **Private Company** or any **Insured Person** in any capacity; or which is brought or maintained by any security holder or member of a **Private Company**, whether directly or derivatively, unless such security holder's or member's **Claim** is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any **Insured Person** or any **Private Company**; provided, however, this exclusion shall not apply to:



00 PCD0048 00 03 03                                                                     Page 6 of 14
2 - 14176

ARCH0001993

(1) any **Claim** brought by an **Insured Person** in the form of a cross-claim or third party claim for contribution or indemnity which is part of, and results directly from, a **Claim** that is covered by this Policy; or

(2) any **Employment Claim**;

(g) for bodily injury, sickness, disease or death of any person, or for damage to or destruction of any tangible property including loss of use thereof;

(h) for emotional distress, mental anguish, outrage, humiliation, false arrest or imprisonment, abuse of process, malicious prosecution, defamation, violation or invasion of any right of privacy or private occupancy, trespass, nuisance or wrongful entry or eviction; provided, however, this exclusion shall not apply to any **Employment Claim**;

(i) alleging, arising out of, based upon or attributable to:

(1) any actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time; or

(2) any request, demand or order to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants,

including but not limited to such a **Claim** alleging damage to the **Private Company** or its security holders; provided, however, this exclusion shall not apply to any **Employment Claim**.

"Pollutants" include, but are not limited to, any solid, liquid, gaseous, biological, radiological or thermal irritant or contaminant, including without limitation smoke, vapor, soot, fumes, acids, alkalies, chemicals, mold, fungi, odors, noise, lead, oil or oil products, radiation, asbestos or asbestos-containing products, waste and any electric, magnetic or electromagnetic field of any frequency. "Waste" includes, but is not limited to, material to be recycled, reconditioned, or reclaimed and nuclear materials.

(j) alleging, arising out of, based upon, or attributable to any actual or attempted offering, solicitation, sale, distribution or issuance of securities by a **Private Company** ("Offering") or a purchase or sale of such securities subsequent to such Offering; provided, however, this exclusion shall not apply to any private, non-public Offering in the event that (i) within 30 days prior to the effective time of such private Offering, the **Named Company** gives the **Insurer** written notice of such private Offering, together with full particulars and underwriting information as required by the **Insurer**; and (ii) prior to the effective time of such private Offering, the **Named Company** accepts such terms and conditions and pays any additional premium required by the **Insurer** for such coverage;

(k) for violation(s) of any of the responsibilities, obligations or duties imposed upon fiduciaries by the Employee Retirement Income Security Act of 1974, or amendments thereto or any similar provisions of state or foreign statutory or common law; or

(l) alleging, arising out of, based upon, or attributable to any failure or omission by an **Insured** to obtain effect or maintain adequate insurance.

2. The **Insurer** shall not be liable under Coverage C to make any payment for **Loss** as a result of a **Claim** made against a **Private Company**:



ARCH0001994

(a) for any actual or alleged obligation under or breach of any oral or written contract or agreement, including any liability of others assumed by the **Private Company** under any such contract or agreement; provided, however, this exclusion shall not apply to (i) to an actual or alleged breach of an implied contract in an **Employment Claim**, or (ii) to the extent the **Private Company** would have been liable for such **Loss** in the absence of such contract or agreement;

(b) alleging, arising out of, based upon, or attributable to any actual or alleged obligation of the **Private Company** pursuant to any workers compensation, unemployment insurance, social security, disability benefits or any similar federal, state or local statutory law or common law anywhere in the world; provided, however, this exclusion shall not apply to any **Employment Claim** for **Retaliation**;

(c) for any actual or alleged violation of the Fair Labor Standards Act (except the Equal Pay Act), the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state or local statutory law or common law anywhere in the world; provided, however, this exclusion shall not apply to any **Employment Claim** for **Retaliation**;

(d) alleging, arising out of, based upon, or attributable to a lockout, strike, picket line, hiring of replacement workers, or other similar actions in connection with labor disputes or labor negotiations;

(e) to the extent such **Loss** constitutes **Benefits** due or to become due or the equivalent value of such **Benefits**; provided, however, this exclusion shall not apply to **Defense Costs**;

(f) brought or maintained by or on behalf of a customer or client of the **Private Company** in connection with the actual or alleged rendering or failure to render any service to or for the benefit of such customer or client;

(g) alleging, arising out of, based upon, or attributable to any actual or alleged violation of any statutory, regulatory or common law involving price fixing, restraint of trade, monopolization, unfair trade practices, anti-trust, price discrimination, predatory pricing, business competition or tortuous interference in another's business or contractual relationships; or

(h) alleging, arising out of, based upon or attributable to any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, service mark or misappropriation of ideas or trade secrets, or other intellectual property rights.

## SECTION V

LIMIT OF LIABILITY - (FOR ALL **LOSS**, INCLUDING **DEFENSE COSTS**).

The Limit of Liability stated in Item 3 of the Declarations is the aggregate limit of the **Insurer's** liability for all **Loss** under all Coverages combined, as a result of all **Claims** first made against the **Insureds** during the **Policy Period** and the Discovery Period (if applicable) and reported in writing to the **Insurer** pursuant to Section X. The Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the **Policy Period**.

The **Insurer** shall not pay **Defense Costs** in addition to the Limit of Liability. **Defense Costs** are part of **Loss** and as such are subject to and reduce the Limit of Liability.

ARCH0001995

All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** shall be deemed to be one **Claim** for purposes of this Policy, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made against an **Insured**, regardless of whether such date is before or during the **Policy Period**.

## SECTION VI

RETENTION.

The **Insurer** shall only be liable for the amount of **Loss** as a result of each **Claim** which is in excess of the applicable Retention amount stated in Item 4 of the Declarations, such Retention amount to be borne by the **Insureds** and shall remain uninsured.

No Retention amount applies to Coverage A.

The Retention amount stated in Item 4(a) of the Declarations applies to **Loss** as a result of any **Claim** other than an **Employment Claim**. The Retention amount stated in Item 4(b) of the Declarations applies to **Loss** as a result of an **Employment Claim**.

In the event more than one of the Retention amounts stated in Item 4(a) and 4(b) of the Declarations otherwise applies to a **Claim**, then, as to that **Claim**, the highest of such Retention amounts shall be deemed the maximum aggregate Retention amount applicable to **Loss** as a result of such **Claim**.

## SECTION VII

INDEMNIFICATION.

(a)     If the **Corporation**:

    (1)     is permitted or required by common or statutory law to indemnify the **Insured Persons** for **Loss** or to advance **Defense Costs** on their behalf; and

    (2)     fails or refuses, other than for reason of **Financial Impairment**, to indemnify the **Insured Persons** for such **Loss** or to advance such **Defense Costs**;

then, any payment of such **Loss** or advancement of such **Defense Costs** by the **Insurer** shall be subject to the applicable Coverage B Retention amount stated in Item 4 of the Declarations.

For purposes of this Section VII, the **Private Company** shall be deemed to provide indemnification to the **Insured Persons** for such **Loss** or advancement of such **Defense Costs** to the fullest extent permitted or required by law, and hereby agrees to indemnify the **Insured Persons** for such **Loss** and to advance such **Defense Costs** to the fullest extent permitted or required by law, including the making in good faith of any required application for court approval.

(b)     While the **Private Company** is unable to indemnify the **Insured Persons** for **Loss** or to advance **Defense Costs** for reasons of **Financial Impairment**, no Retention shall apply to such **Loss** or **Defense Costs**; provided the **Insureds** shall take all action reasonably required to obtain court approval or other authorization for any such indemnification or advancement.

## SECTION VIII

PAYMENT PRIORITY.



00 PCD0048 00 03 03
2 - 14176

ARCH0001996

If the amount of any covered **Loss** which is otherwise due and owing by the **Insurer** under this Policy exceeds the then-remaining Limit of Liability of this Policy, the **Insurer** shall pay such **Loss** (subject to such Limit of Liability) in the following priority:

(a)     first, the **Insurer** shall pay any such **Loss** covered under Coverage A;

(b)     second, only if and to the extent the payment under Coverage A does not exhaust the Limit of Liability, the **Insurer** shall pay any remaining **Loss** otherwise covered under this Policy.

Subject to the foregoing paragraph, the **Insurer** shall, upon receipt of a written request from the chief executive officer of the **Named Company**, delay any payment of covered **Loss** otherwise due and owing under Coverage B and/or C until such time as the **Named Company** designates; provided the **Insurer's** liability with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

## SECTION IX

NOTICE.

All notices to the **Insurer** shall refer to the Policy Number and shall be given in writing and sent by mail, prepaid express courier or by facsimile, to the address listed in Item 9 of the Declarations and shall be effective upon receipt.

(a)     The **Private Company** or an **Insured Person** shall, as a condition precedent to the obligations of the **Insurer** under this Policy, give written notice to the **Insurer** at the address or facsimile number listed in Item 9 of the Declarations of a **Claim** made against an **Insured** as soon as practicable after the **Named Company's** risk manager or general counsel (or equivalent position) first becomes aware of the **Claim**, but in all events no later than sixty (60) days after the end of the **Policy Period** or the Discovery Period (if applicable).

(b)     If during the **Policy Period** the **Private Company** or an **Insured Person** shall become aware of any circumstances which may reasonably be expected to give rise to a **Claim** being made against an **Insured** and shall give written notice to the **Insurer** of the circumstances, the anticipated allegations of **Wrongful Act(s)** and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, then a **Claim** which is subsequently made against such **Insured** and reported to the **Insurer** for a **Wrongful Act**:

(1)     which is the same as any **Wrongful Act** alleged or contained in such notice, or

(2)     which together with any **Wrongful Act** alleged or contained in such notice constitute **Interrelated Wrongful Acts**,

shall be considered made at the time such notice of circumstances was first given to the **Insurer**. However, the **Insurer** shall not be liable under this Policy for any amount incurred by an **Insured** in the defense, investigation or settlement of any such potential **Claim** prior to the date the **Claim** is actually made against the **Insured**.

## SECTION X

**DEFENSE COSTS** (INCLUDING THE ADVANCEMENT OF **DEFENSE COSTS**), SETTLEMENTS, JUDGMENTS AND ALLOCATION.

Except as hereinafter stated, the **Insurer** shall advance, at the written request of the **Insureds**, covered **Defense Costs** excess of the applicable Retention prior to the final disposition of a **Claim**. Such advancements by the **Insurer** shall be repaid to the **Insurer** by the **Insured Persons** or the **Private**

ARCH0001997

**Company** severally according to their respective interests in the event and to the extent that it is subsequently determined that the **Insured Persons** or the **Private Company** are not entitled under the terms and conditions of this Policy to payment of such **Defense Costs**.

The **Insurer** does not assume any duty to defend any **Claim**. However, the **Insureds** may at their sole option tender to the **Insurer**, within twenty (20) days following the date the **Claim** is made against such **Insured**, the defense of a **Claim** for which coverage is provided under this Policy. Regardless of whether the **Insurer** assumes the defense of such **Claim**, the **Insureds** shall not admit or assume any liability, enter into any settlement agreement, make any settlement offer, stipulate to any judgment, or incur any **Defense Costs** without the prior written consent of the **Insurer**. Only those settlements, stipulated judgments and **Defense Costs** which have been consented to by the **Insurer** shall be recoverable as **Loss** under the terms of this Policy. The **Insurer's** consent shall not be unreasonably withheld.

The **Insurer** shall have the right to effectively associate with the **Insureds** in the defense of any **Claim** that involves or appears reasonably likely to involve the **Insurer**, including but not limited to negotiating a settlement. The **Insureds** shall give the **Insurer** full cooperation and such information as it may reasonably require. Upon the **Insurer's** request, the **Insureds** shall attend proceedings, hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits.

The **Insurer** may make any settlement of any **Claim** against an **Insured** which the **Insurer** deems expedient, subject to such **Insured's** written consent. If any **Insured(s)** withhold(s) consent to such settlement, the **Insurer's** liability for all **Loss** as a result of such **Claim** shall not exceed the amount for which the **Insurer** could have settled such **Claim** plus **Defense Costs** incurred as of the date such settlement was proposed in writing by the **Insurer**.

If as a result of any **Claim** an **Insured** incurs both **Loss** covered under this Policy and loss not covered under this Policy, either because such **Claim** is made against both the **Insured** and others or because such **Claim** includes both covered and uncovered matters, then such amount shall be allocated between covered **Loss** and uncovered loss based on the relative legal and financial exposures of the parties to such covered and uncovered matters, and in the event of a settlement, also based on the relative benefit to the parties from settlement of such covered and uncovered matters.

In the event that the **Insurer** and the **Insureds** cannot agree as to the amount of **Defense Costs** to be advanced under the Policy, then the **Insurer** shall advance **Defense Costs** which the **Insurer** believes to be covered under this Policy until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and applicable law.

### SECTION XI

DISCOVERY PERIOD.

Except as provided below in this Section XI, if the **Insurer** shall refuse to renew this Policy, the **Named Company** shall have the right, upon payment of the Discovery Period Premium stated in Item 7(a) of the Declarations, to a continuation of the coverage afforded by this Policy for the Additional Period stated in Item 7(b) of the Declarations following the effective date of such nonrenewal (herein referred to as the "Discovery Period"), but only to the extent a **Claim** is first made against the **Insureds** during the Discovery Period for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this Policy. The rights contained in this paragraph shall terminate, however, unless written notice of such election together with the additional premium due is received by the **Insurer** within thirty (30) days after the effective date of nonrenewal.

The additional premium for the Discovery Period shall be fully earned at the inception of the Discovery Period. The Discovery Period is not cancelable. This Section and the rights contained herein shall not apply as a result of a renewal quotation with different terms and conditions than the expiring Policy.

00 PCD0048 00 03 03
2 - 14176

ARCH0001998

## SECTION XII

CANCELLATION.

This Policy may be canceled by the **Named Company** by surrender thereof to the **Insurer** or any of its authorized representatives or by mailing to the **Insurer** written notice stating when thereafter the cancellation shall be effective.

This Policy may be canceled by the **Insurer** for non-payment of premium by mailing to the **Named Company** at the address shown in the Declarations written notice stating when not less than 10 days thereafter such cancellation shall be effective.

This Policy may be canceled by agreement of the **Insurer** and the **Named Company**.

The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**.

If the **Named Company** cancels this Policy, earned premium shall be the customary short rate amount of the annual premium, and if the **Insurer** cancels this Policy, earned premium shall be the pro rata amount of the annual premium; provided, however, if at the time of cancellation the Limit of Liability has been exhausted, the entire premium shall be considered earned. Premium adjustment may be made at the time cancellation is effected and, if not then made, shall be made as soon as practicable after cancellation becomes effective. Mailing of the **Insurer's** check or the check of its representative shall be sufficient tender of any refund of premium due to the **Named Company**.

## SECTION XIII

CHANGE IN CONTROL OF THE **NAMED COMPANY**.

Immediately upon the occurrence of any of the following:

(a)     the **Named Company** shall consolidate with or merge into, or sell all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert;

(b)     any person or entity or group of persons and/or entities acting in concert shall acquire securities which result in ownership by such person(s) or group(s) of more than 50% of the outstanding securities representing the present right to vote for the election of directors or equivalent positions of the **Named Company**; or

(c)     the appointment of a receiver, conservator, trustee, liquidator or rehabilitator or any similar official for or with respect to the **Named Company**

(any of the above events are herein referred to as the "Transaction")

then, this Policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective date of the Transaction, but there shall be no coverage afforded by any provision of this Policy for any actual or alleged **Wrongful Act** occurring after the effective date of the Transaction. This Policy may not be canceled after the effective date of the Transaction and the entire premium for this Policy shall be deemed earned as of such date.

The **Named Company** shall give the **Insurer** written notice of the Transaction as soon as practicable, but not later than thirty (30) days after the effective date of the Transaction.



ARCH0001999

## SECTION XIV

SUBROGATION.

In case of payment of **Loss** by the **Insurer** hereunder, the **Insurer** shall be subrogated to the amount of such payment to the **Insured's** right of recovery against any other person or organization for such **Loss**, and the **Insured** shall execute all papers required, and shall do everything that may be necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit in the name of the **Insured**. In no event, however, shall the **Insurer** exercise its rights of subrogation against an **Insured** under this Policy unless such **Insured** has committed a deliberate criminal act, or deliberate fraudulent act, or obtained any profit or advantage to which such **Insured** was not legally entitled, and as to any of the foregoing, only as evidenced by a written statement or written admission by such **Insured** or a judgment or other final adjudication in the underlying action or in a separate action, alternative dispute resolution process (including one pursuant to Section XVI) or other proceeding.

Any recovery (after payment of expenses incurred to obtain the recovery) with respect to a **Loss** shall be used to reduce the **Loss**, and so much of such recovery shall be paid to the **Insurer** as will reduce the **Loss** ultimately borne by the **Insurer** to what it would have been had the recovery preceded any payment of such **Loss** by the **Insurer**.

## SECTION XV

OTHER INSURANCE.

Such insurance as is provided by this Policy shall apply only as excess over any other valid and collectible insurance, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided by this Policy. This Policy shall also be specifically excess over any other valid and collectible insurance pursuant to which any other **Insurer** has a duty to defend a **Claim** for which this Policy may be obligated to pay **Loss**.

## SECTION XVI

ARBITRATION.

Only if requested by the **Insured**, the **Insurer** shall submit any dispute, controversy or claim arising out of or relating to this Policy or the breach, termination or invalidity thereof to final and binding arbitration pursuant to such rules and procedures as the parties may agree. If the parties cannot so agree, the arbitration shall be administered by the American Arbitration Association in accordance with its then prevailing commercial arbitration rules. The arbitration panel shall consist of one arbitrator selected by the **Insured**, one arbitrator selected by the **Insurer**, and a third independent arbitrator selected by the first two arbitrators. In any such arbitration, each party will bear its own legal fees and expenses.

## SECTION XVII

NOTICE AND AUTHORITY.

It is agreed that the **Named Company** shall act on behalf of its **Subsidiaries** and all **Insured Persons** with respect to giving notice of **Claim**, giving and receiving notice of cancellation, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the receipt and acceptance of any endorsements issued to form a part of this Policy and the exercising or declining to exercise any right to a Discovery Period.



00 PCD0048 00 03 03
2 - 14176

ARCH0002000

## SECTION XVIII

ASSIGNMENT.

No assignment of interest under this Policy shall be valid, unless the written consent of the **Insurer** is endorsed hereon.

## SECTION XIX

ACTION AGAINST **INSURER**.

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, and the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured,** the claimant and the **Insurer**.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of any insurance afforded by this Policy. No person or organization shall have any right under this Policy to join the **Insurer** as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the **Insurer** be impleaded by the **Insured** or his legal representative. Bankruptcy or insolvency of the **Insured** or the **Insured's** estate shall not relieve the **Insurer** of any of its obligations hereunder.

## SECTION XX

REPRESENTATIONS.

By acceptance of this Policy the **Insureds** agree that the statements in the **Application** are their agreements and representations and that this Policy is issued in reliance upon the truth of such agreements and representations, which are deemed material to the acceptance of the risk or the hazard assumed by the **Insurer** under the Policy.

If any **Insured** has knowledge or information, as of the effective date of the **Application**, of any act, error, omission or circumstance which may give rise to a **Claim** and which is required to be disclosed in the **Application,** whether or not actually disclosed in the **Application**, any **Claim** subsequently arising therefrom shall be excluded from coverage under this Policy; provided this paragraph does not limit and is without prejudice to any other rights, defenses and remedies available to the **Insurer**.

## SECTION XXI

ENTIRE AGREEMENT.

This Policy, including the Declarations, **Application** and Endorsements, embodies all agreements existing between the **Named Company** and the **Insurer** or any of its agents relating to this insurance.

## SECTIONXXII

CAPTIONS.

The headings or captions used in this Policy, including any Endorsements, are for the purposes of reference only and shall not otherwise affect the meaning of this Policy



00 PCD0048 00 03 03
2 - 14176

ARCH0002001

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED(S) ENDORSEMENT (EXCESS)**

In consideration of the premium charged, it is hereby understood and agreed that:

The term **Insured(s)** is amended to include the following entity(ies):

Centurion Real Estate Partners, LLC                    SC 07/02/2007

Centurion Real Estate Management, LLC

Centurion Real Estate Investors I, LLC

Centurion Real Estate Investors II, LLC

Centurion Real Estate Investors IIA, LLC

Centurion Real Estate Investors IV, LLC

Concorde 65 LLC

Concorde Storage LLC

Centurion Europe Investors I SCI

Mission Place LLC

All other terms and conditions of this Policy remain unchanged.

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Endorsement Number:1

Policy Number: PCD0015105-01

Named Insured: Centurion Real Estate Partners, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 5/03/2007

COPY

00 ML0207 33 03 04                                      Page 1 of 1
2-14176

ARCH0002002

**\*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT DELETING EXCLUSION IV.1.(I)**

In consideration of the premium charged, it is hereby understood and agreed that **SECTION IV EXCLUSIONS** 1.(I) is deleted in its entirety.

SC-07/02/2007

NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:2

Policy Number: PCD0015105-01

Named Insured: Centurion Real Estate Partners, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 5/03/2007



00 ML0207 33 03 04
2- 14176

Page 1 of 1

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ENDORSEMENT AMENDING SECTION XX (PRIVATE COMPANY)

In consideration of the premium charged, it is hereby understood and agreed that **SECTION XX** REPRESENTATIONS is deleted in its entirely and replaced with the following:

### SECTION XX

By acceptance of this Policy the **Insureds** agree that the statements in the **Application** are their agreements and representations and that this Policy is issued in reliance upon the truth of such agreements and representations, which are deemed material to the acceptance of the risk or hazard assumed by the **Insurer** under the Policy. No knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

If the **Application** contains any statements or representations that are untrue, then:

(a) solely with respect to Coverage A, this Policy shall not be rescinded by the **Insurer** in whole or in part for any reason; provided, however, if the **Private Company** is permitted or required by law to indemnify an **Insured Person** who knew the facts that were not truthfully disclosed, or to advance **Defense Costs** on behalf of such **Insured Person**, and does not in fact do so other than because of **Financial Impairment**, then this Policy shall be void as to such **Insured Person** under Coverage A;

(b) this Policy shall be void as to the **Private Company** (i) under Coverage B if the indemnified **Insured Person** knew the facts that were not truthfully disclosed, and (ii) under Coverages B and C if an **Executive Officer** of any **Private Company** knew the facts that were not truthfully disclosed, whether or not such **Insured Person** or **Executive Officer** knew of such untruthful disclosure in the **Application**.

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

All other terms and conditions of this Policy remain unchanged.

Endorsement Number:3

Policy Number: PCD0015105-01

Named Insured: Centurion Real Estate Partners, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 5/03/2007

COPY

00 ML0207 33 03 04
2- 14176

Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## NEW YORK AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under:

**Directors and Officers Liability Insurance Policy – Broad Form Individual Non-Indemnifiable Loss**
**Directors and Officers Liability Insurance Policy – Individual Non-Indemnifiable Loss**
**Independent Directors Liability Insurance Policy – Individual Non-Indemnifiable Loss**

If this endorsement applies to the **INDIVIDUAL NON-INDEMNIFIABLE LOSS INDEPENDENT DIRECTORS LIABILITY INSURANCE POLICY,** the term **Insured Person(s),** where ever used in this endorsement, shall be replaced by the term **Independent Director(s).**

I.  Section X., CANCELLATION is deleted in its entirety and replaced with the following:

CANCELLATION AND NONRENEWAL

**Cancellation**

1. CANCELLATION BY THE INSURER DURING FIRST SIXTY DAYS.

During the first 60 days of the first year that this Policy shall be in effect, no cancellation of this Policy by the **Insurer** shall become effective until 20 days after written notice is mailed or delivered to the **Named Corporation** by the **Insurer** at the mailing address shown in the Policy, and to the **Named Corporation's** authorized agent or broker, if any, unless such cancellation is due to the reasons specified in Section 3 of this endorsement.  If such cancellation is due to the reasons specified in Section 3 of this endorsement, such cancellation shall not be effective until 15 days after written notice is mailed or delivered to the **Named Corporation** by the **Insurer** at the mailing address shown in the Policy, and to the **Named Corporation's** authorized agent or broker, if any.

2. CANCELLATION BY THE INSURER AFTER 60 DAYS.

After this Policy shall have been in effect for 60 days, no cancellation of this Policy by the **Insurer** shall become effective until 15 days after written notice is mailed or delivered to the **Named Corporation** by the **Insurer** at the mailing address shown in the Policy, and to the **Named Corporation's** authorized agent or broker, if any.  Such cancellation may be only for one or more of the reasons set forth in Section 3 hereof.

3. PERMISSIBLE REASONS FOR CANCELLATION ON 15 DAYS' NOTICE.

This Policy may be canceled with 15 days notice for one or more of the following reasons:

( i )  non-payment of premium;

( ii )  conviction of an **Insured** of a crime arising out of acts increasing the hazard insured against;

---

**NOTICE:  THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT.  HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

00 MLE0002 33 12 04
2 - 14176

COPY

( iii )     discovery of fraud or material misrepresentation in the application for the Policy or in the presentation of a **Claim** thereunder;

( iv )     after issuance of the Policy or after the last renewal date, discovery of an act or omission, or a violation of any Policy condition by an **Insured**, that substantially and materially increases the hazard insured against, and which occurred subsequent to inception of the current **Policy Period**;

( v )     cancellation is required pursuant to a determination by the New York Superintendent of Insurance that continuation of the present premium volume of the **Insurer** would jeopardize the **Insurer's** solvency or be hazardous to the interests of policyholders of the **Insurer**, its creditors or the public; and

( vi )     a determination by the Superintendent of Insurance that the continuation of the Policy would violate, or would place the **Insurer** in violation of, any provision of the New York Insurance Law.

## 4. RETURN OF UNEARNED PREMIUIM

In the event of cancellation by the **Named Corporation,** the **Insurer** shall refund the unearned premium on the customary short rate basis within thirty (30) days of the later of the effective date of the cancellation or the date of delivery of the **Named Corporation's** notice of intent to cancel. In the event of cancellation by the **Insurer**, the **Insurer** shall refund the paid premium less the earned portion thereof within (10) business days after the effective date of cancellation, subject always to the retention by the **Insurer** of any minimum premium stipulated in the Policy (or proportion thereof previously agreed upon) in the event of cancellation whether by the **Insurer** or the **Named Corporation**.

## Nonrenewal

### 1. NON-RENEWAL/CONDITIONAL RENEWAL OF THIS POLICY BY THE INSURER.

(a) This Policy shall remain in full force and effect pursuant to the same terms, conditions and rates unless a written notice is mailed or delivered to the **Named Corporation** and its authorized agent or broker, if any, by the **Insurer**, indicating the **Insurer's** intention:

( i )     not to renew the Policy;

( ii )     to condition its renewal upon change of limits, change in type of coverage, reduction of coverage, increased deductible or addition of any exclusion, or upon increased premiums in excess of ten percent; or

( iii )     that the Policy will not be renewed or will not be renewed upon the same terms, conditions or rates; such alternative renewal notice will advise the **Named Corporation** that a second notice shall be mailed or delivered at a later date indicating the **Insurer's** intention as specified in subsections ( i ) or ( ii ) hereof and that coverage shall continue on the same terms, conditions and rates as the expiring policy, until the later of the expiration date or 60 days after the second notice is mailed or delivered. The aggregate limit of expiring policy is increased in proportion to any policy extension as a result of late notice.

(b) Any notice as described in subsection ( a ) hereof shall contain the specific reason or reasons for non-renewal or conditional renewal, and shall set forth the amount of any premium increase and the nature of any other proposed changes. Such notice shall be mailed or delivered at least 60 but not more than 120 days in advance of the end of the **Policy Period**.

(c) This section shall not apply if the **Named Corporation**, or any agent or broker authorized by the **Named Corporation**, or another insurer of the **Named Corporation**, mails or delivers written notice to the **Insurer** that the Policy has been replaced or is no longer required.

00 MLE0002 33 12 04
2 - 14176

COPY

**II.** Section IX., DISCOVERY PERIOD, is deleted in its entirety and replaced with the following

1. In the case of cancellation or non-renewal of this policy by the **Named Corporation** or the **Insurer** for any reason other than listed below:

   (a) decrease in limits,

   (b) increased deductible,

   (c) nonpayment of premium or fraud when this Policy has been in effect for less than one year

   (d) new exclusion or any other change in coverage less favorable to the **Named Corporation**,

   the **Named Insured** shall have the right, subject to the other terms and conditions of this Policy, or any endorsement attached thereto, to have an endorsement issued extending the time during which **Claims** can be reported, but only to the extent a **Claim** is first made against the **Insured Persons** during this extended reporting time for any **Wrongful Act** occurring prior to the end of the **Policy Period** and otherwise covered by this Policy (a "Discovery Period").

2. AUTOMATIC DISCOVERY PERIOD TERMS
   An automatic sixty (60) day Discovery Period option, effective at the termination of the **Policy Period**, will be provided by the **Insurer** at no additional cost unless this insurance is replaced with the same or similar insurance issued by the **Insurer**. The limits available under this extension shall be part of, and not in addition to, the limits available under the expiring **Policy Period**. Coverage provided by this automatic Discovery Period shall be specific excess over any replacement policy providing the same or similar language.

3. ADDITIONAL DISCOVERY PERIOD TERMS

   (a) Within thirty (30) days after termination of coverage the **Insurer** will advise the **Named Corporation** in writing of the automatic Discovery Period coverage and the availability of, the premium for, and the importance of purchasing additional Discovery Period coverage or the **Named Corporation's** right to a free Discovery Period option as may be provided by the Policy.

   (b) The **Named Corporation** shall have the greater of sixty (60) days from the effective date of termination of coverage, or thirty (30) days from the date of mailing or delivery of the advice required by paragraph 3(a) to submit written acceptance of Discovery Period coverage and the payment of any premiums due. The premium due for Discovery Period coverage shall be as follows:

   90% of the full annual premium for this policy, for a period of twelve (12) months

   175% of the full annual premium for this policy, for a period of twenty-four (24) months

   200% of the full annual premium for this policy, for a period of thirty-six (36) months

   (c) For the purpose of determining the length of the Discovery Period, the coverage required by 2. above shall be included in the reporting period.

4. SEPARATE AGGREGATE LIMIT OF LIABILITY

   A separate aggregate **Limit of Liability** equal to the limit specified on the Declarations and any endorsement thereto shall apply to any **Claim** or **Claims** reported during the Discovery Period (except for the automatic sixty (60) day Discovery Period required by section III, part 2. automatic Discovery Period above). The limit applicable to each **Claim** shall not be increased or changed.

5. ADDITIONAL EXTENDED REPORTING TERMS (LIQUIDATION, ETC.)

   (a) A claims-made policy issued to a corporation, partnership or other entity shall provide Discovery Period coverage upon termination of coverage to any person covered under the policy. 

00 MLE0002 33 12 04 page 3 of 6
2 - 14176

ARCH0002007

(i) ...ch entity has been placed in liquidation ... bankruptcy or permanently ceases operations;

(ii) the entity or its designated trustee does not purchase Discovery Period coverage; and

(iii) such person requests Discovery Period coverage in writing within one-hundred twenty (120) days of the termination of coverage.

(b) The **Insurer** shall have no obligation to provide any notice to any such person of the availability of the Discovery Period coverage required by paragraph III.5.a.i of this endorsement.

(c) The **Insurer** may charge the person for whom Discovery Period coverage is provided a premium commensurate with such coverage.

**III.** Section XVII., ACTION AGAINST INSURER is deleted in it entirety and replaced by the following:

No action shall lie against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this Policy, but not until the amount of the **Independent Director's** obligation to pay shall have been determined either by judgment against the **Independent Director** or by written agreement of the **Independent Director**, the claimant and the **Insurer**.

**IV.** The policy is amended with the addition of the following terms and conditions:

### SECTION XXI

NOTICE OF CLAIM

Notice given by or on behalf of the **Named Corporation**, or written notice by or on behalf of the injured person or any other claimant to any licensed agent of the **Insurer**, with particulars sufficient to identify the **Named Corporation**, shall be deemed notice to the **Insurer**.

Notwithstanding anything in the Policy to the contrary, failure to give any notice required by the Policy within the time prescribed therein shall not invalidate any **Claim** made by the **Named Corporation** or by any other claimant, if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

### SECTION XXII

RETROACTIVE OR PRIOR ACTS DATES

A retroactive or prior acts date may not be changed during the term of the claims-made relationship or any Discovery Period.

### SECTION XXIII

PREJUDGMENT INTEREST

Prejudgment interest where payable under this Policy, will be in addition to the **Limits of Liability** stated in the declarations.

### SECTION XXIV

TRANSFER OF DUTIES WHEN LIMITS OF LIABILITY ARE USED UP



ARCH0002008

1. If the **Insurer** concludes that, based on incidents, occurrences, offenses, **Claims** or suits which have been reported to the **Insurer** and to which this Policy may apply, that any limit (each **Claim**, each incident, each occurrence, aggregate, or other) under the Policy is likely to be used up in the payment of judgments or settlements, the **Insurer** will notify the **Named Corporation**, in writing, to that effect.

2. When a **Limit of Liability** has actually been used up in the payment of judgments or settlements:

   (a) The **Insurer** will notify the **Named Corporation**, in writing, as soon as practicable, that:

      (i) such a limit has actually been used up; and

      (ii) the **Insurer's** duty to defend suits seeking damages subject to that limit has ended.

   (b) The **Insurer** will initiate, and cooperate in, the transfer of control, to the **Named Corporation**, of all **Claims** and suits seeking damages which are subject to that limit and which are reported to the **Insurer** before that limit is used up. The **Named Corporation** must cooperate in the transfer of control of said **Claims** and suits.

   The **Insurer** agrees to take such steps, as its deems appropriate, to avoid a default in, or continue the defense of, such suits until such transfer is completed, provided the **Named Corporation** is cooperating in completing such transfer. The **Insurer** has no obligation to take any action whatsoever with respect to any **Claim** or suit seeking damages that would have been subject to that limit, had it not been used up, if the **Claim** or suit is reported to the **Insurer** after that **Limit of Liability** has been used up.

   (c) The **Named Corporation** and any other **Insured** involved in a suit seeking damages subject to that limit, must arrange for the defense of such suit within such time period as agreed to between the appropriate **Insured** and us. Absent any such agreement, arrangements for the defense of such suit must be made as soon as practicable.

3. The **Named Corporation** will reimburse the **Insurer** for expenses the **Insurer** incurs in taking those steps it deems appropriate in accordance with paragraph 2.b. above.

   The duty of the **Named Corporation** to reimburse the **Insurer** will begin on:

   (a) the date on which the applicable limit of insurance is used up, if the **Insurer** sent notice in accordance with paragraph 1. above; or

   (b) the date on which the **Insurer** sent notice in accordance with paragraph 2.a. above, if the **Insurer** did not send notice in accordance with paragraph 1. above.

4. The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of the **Insurer's** duty to defend, will not be affected by the **Insurer's** failure to comply with any of the provisions of this condition.



ARCH0002009

All other terms and conditions of this Policy shall remain unchanged.

SC 07/02/2007

Endorsement Number:4

Policy Number: PCD0015105-01

Named Insured: Centurion Real Estate Partners, LLC

This endorsement is effective on the inception date of this Policy unless otherwise stated herein:

Endorsement Effective Date: 5/03/2007



00 MLE0002 33 12 04
2 - 14176

page 6 of 6

# TERRORISM COVERAGE DISCLOSURE NOTICE

## TERRORISM COVERAGE PROVIDED UNDER THIS POLICY

The Terrorism Risk Insurance Act of 2002 and amendments thereto established a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. The Act provides that, to be certified, an act of terrorism must cause losses that exceed five million dollars. The act of terrorism must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States.

In accordance with the Terrorism Risk Insurance Act of 2002 and amendments thereto, we are required to offer you coverage for losses resulting from an act of terrorism **that is certified under the federal program** as an act of terrorism committed by an individual(s) acting on behalf of a foreign person or foreign interest. The policy's other provisions will still apply to such an act. Your decision is needed on this question: do you choose to pay the premium for terrorism coverage stated in this offer of coverage, or do you reject the offer of coverage and not pay the premium? You may accept or reject this offer.

If your policy provides commercial property coverage, in certain states, statutes or regulations may require coverage for fire following an act of terrorism. In those states, if terrorism results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to Legal Liability coverage forms or Leasehold Interest coverage forms.

**Your premium will include the additional premium for terrorism as stated in the section of this Notice titled DISCLOSURE OF PREMIUM.**

## DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. **The federal share equals 90% in 2006 and 85% in 2007 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.**

## DISCLOSURE OF PREMIUM

Your premium for terrorism coverage is: **Redacted**
(This charge/amount is applied to obtain the final premium.)

**You may choose to reject the offer by signing the statement below and returning it to us. Your policy will be changed to exclude the described coverage.** If you chose to accept this offer, this form does not have to be returned.

## REJECTION STATEMENT

> I hereby decline to purchase coverage for certified acts of terrorism. I understand that an exclusion of certain terrorism losses will be made part of this policy.

_____

Policyholder/Legal Representative/Applicant's
Signature

_____

Print Name of Policyholder/Legal
Representative /Applicant

Date: _____

Centurion Real Estate Partners, LLC
Named Insured

_____

Arch Insurance Company
Insurance Company

Policy Number: PCD0015105-01

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

COPY

# ADDENDUM TO TERRORISM DISCLOSURE NOTICE

## Excluded lines of Insurance

If your policy contains insurance for fidelity, burglary and theft, commercial auto, medical malpractice or professional liability, the **TERRORISM COVERAGE DISCLOSURE NOTICE** does not apply to such lines of insurance because they are excluded from the federal Terrorism Risk Insurance Act Program ("Program").

## Potential Terrorism Risk Insurance Act Program Change

SC 07/02/2007

For lines of insurance subject to the Program, the Program will terminate at the end of December 31, 2007 unless renewed, extended, or replaced by the federal government. Your policy will become effective (or will be renewed) while the Program is still in effect, but prior to a decision by the federal government on extension of the Program. Since the timetable for any further United States Government action is unknown at this time, we continue to offer the terrorism coverage described in the second paragraph of the **TERRORISM COVERAGE DISCLOSURE NOTICE** for the period of time from your policy inception until 12/31/07.

If the Program is renewed, extended or replaced during the term of your policy with the requirement that we make terrorism available, the treatment of terrorism under your policy will continue to be applicable subject to all the terms, definitions, exclusions, and conditions of your policy unless we are required to make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply under this policy.

If the Program terminates, or is renewed, extended or replaced during the term of your policy without a requirement that we make terrorism available, the treatment of terrorism under your policy may change and a conditional terrorism endorsement may be effective.

## Terrorism Premium Impact

If you are charged Terrorism Premium for the period through 12/31/2007 and the Program is renewed, extended or replaced during the term of your policy and we are required to continue to offer terrorism coverage, we will calculate the premium for such period of time from January 1, 2008 until the Expiration date of your policy and provide you with notice and charge additional premium which will be due as specified in the notice.

If you are charged Terrorism Premium for the period up to the Expiration of your policy and the Program terminates, or is renewed, extended or replaced with certain changes, during the term of your policy, then your acceptance of the offer of the terrorism coverage described in the second paragraph of the **TERRORISM COVERAGE DISCLOSURE NOTICE** will only be effective up to December 31, 2007 and the treatment of terrorism thereafter under your policy may change. Unless similar Terrorism Coverage continues to be provided for such period of time from January 1, 2008 until the Expiration date of your policy, any unearned premium for terrorism coverage no longer applicable under your policy, if paid by you, will be returned.

If the Program is renewed, extended or replaced during the term of your policy and we are required to continue to offer terrorism coverage but the level or terms of the Program change to the extent that our premium may not be appropriate, we may recalculate the premium and provide you with notice and charge additional premium which will be due as specified in the notice.

> **NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK STATE INSURANCE DEPARTMENT. HOWEVER, SUCH FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

00 MLT0038 00 01 07
2-14176

COPY

Page 1 of 1